## POPE MANUFACTURING COMPANY *v.* GORMULLY & JEFFERY MANUFACTURING COMPANY. (No. 3.)

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 207.   Argued March 10, 11, 1892. — Decided April 4, 1892.

The monopoly granted by law to a patentee is for one entire thing, and, in order to enable an assignee to sue for an infringement, the assignment must convey to him the entire and unqualified monopoly which the patentee holds in the territory specified.

A conveyance by a patentee of all his right, title and interest in and to the letters patent on velocipedes granted to him, so far as said patent relates to or covers the adjustable hammock seat or saddle, is a mere license.

Claim 1 in letters patent No. 314,142, issued to Thomas J. Kirkpatrick March 17, 1885, for a bicycle saddle, when construed with reference to the previous state of the art, is not infringed by the defendants' saddle.

THIS was a bill in equity for the infringement of two letters patent, namely, No. 216,231, issued to John Shire, June 3, 1879, for an improvement in velocipedes, and second, patent No. 314,142, issued March 17, 1885, to Thomas J. Kirkpatrick, for a bicycle saddle.

Both patents were contested by the defendant upon the grounds of their invalidity and non-infringement, and in addition thereto it was insisted that plaintiff had no title to the

Shire patent. Upon the hearing in the court below, the bill was dismissed, and plaintiff appealed to this court. 34 Fed. Rep. 893.

*Mr. Lewis L. Coburn* and *Mr. Edmund Wetmore* for appellant.

*Mr. Charles K. Offield* for appellees. *Mr. W. C. Goudy* was with him on the brief.

Mr. Justice Brown delivered the opinion of the court.

There are two patents involved in this case, both of which relate to what is known as hammock saddles for bicycles.

(1) The second claim of the Shire patent, No. 216,231, which is the only one alleged to be infringed, and the only one to which the plaintiff appears to have the title, is as follows:

"2. In a velocipede, an adjustable hammock seat J, substantially as set forth."

Plaintiff derives its title to this patent by assignment from Thomas Kirkpatrick, who himself claimed title to it from Shire, the patentee, under the following instrument:

"Be it known, that I, John Shire, of Detroit, Wayne County, Michigan, for and in consideration of one dollar and other valuable considerations to me paid, do hereby sell and assign to Thomas J. Kirkpatrick, of Springfield, Clark County, Ohio, all my right, title and interest in and to the letters patent on velocipedes granted to me June 3, 1879, and No. 216,231, including all rights for past infringement so far as said patent relates to or covers the adjustable hammock seat or saddle, except the right to use said seat or saddle in connection with the velocipede made by me under said patent, in my business at Detroit.

"Signed and delivered at Detroit, this 10th day of July, 1884.

"JOHN SHIRE.

"Witness: J. M. EMERSON."

The instrument should evidently be read as though there were a comma after the word "infringement," as the following words are evidently intended as a limitation upon the prior granting clause. It is then only so far as this patent "relates to or covers the adjustable hammock seat or saddle," that the patentee conveys his right to the same to Kirkpatrick. The patent itself contains four claims, and covers not only the adjustable hammock seat mentioned in the second claim, but three combinations set forth in other claims, of which the hammock seat is an element in only one.

Did this instrument, then, vest in Kirkpatrick the legal title to that element in the patent embodied in the second claim, or was this a mere license giving him a right to make, use and sell the device in this claim, but not vesting in him the legal title, or enabling him to sue thereon in his own name, nor to convey such right to the plaintiff? It really involves the question, which is one of considerable importance, whether a patentee can split up his patent into as many different parts as there are claims, and vest the legal title to those claims in as many different persons. This question has never before been squarely presented to this court, but, in view of our prior adjudications, it presents no great difficulty. The leading case upon this subject is that of *Gayler* v. *Wilder,* 10 How. 477, 494, wherein it was held that the grant of an exclusive right to make and vend an article within a certain territory, upon paying to the assignor a cent per pound, reserving to the assignor the right to use and manufacture the article by paying to the assignee a cent per pound, was only a license, and that a suit for the infringement of the patent right must be brought in the name of the assignor. While that of course was a different question from the one involved in this case, the trend of the entire opinion is to the effect that the monopoly granted by law to the patentee is for one entire thing, and that in order to enable the assignee to sue, the assignment must convey to him the entire and unqualified monopoly which the patentee held, in the territory specified, and that any assignment short of that is a mere license. "For," said Chief Justice Taney, "it was obviously not the intention of the leg-

islature to permit several monopolies to be made out of one, and divided among different persons within the same limits. Such a division would inevitably lead to fraudulent impositions upon persons who desired to purchase the use of the improvement, and would subject a party who, under a mistake as to his rights, used the invention without authority, to be harassed by a multiplicity of suits instead of one, and to successive recoveries of damages by different persons holding different portions of the patent right in the same place. Unquestionably, a contract for the purchase of any portion of the patent right may be good as between the parties as a license, and enforced as such in the courts of justice. But the legal right in the monopoly remains in the patentee, and he alone can maintain an action against a third party who commits an infringement upon it." As the assignment was neither of an undivided interest in the whole patent, nor of an exclusive right within a certain territory, it was held to be a mere license.

In *Waterman* v. *Mackenzie*, 138 U. S. 252, an agreement by which the owner of a patent granted to another "the sole and exclusive right and license to manufacture and sell" a patented article throughout the United States, (not expressly authorizing him to use it,) was held not to be an assignment, but a license, and to give the licensee no right to sue in his own name. The language used by the court in this case was a reaffirmance of that employed by Chief Justice Taney in *Gayler* v. *Wilder*, to the effect that the monopoly granted by the patent laws is one entire thing, and cannot be divided into parts, except as authorized by those laws; and that the right of the patentee to assign his monopoly was limited, either, first, to the whole patent, comprising the exclusive right to make, use and vend the invention throughout the United States; or, second, to an undivided part or share of that exclusive right; or, third, to the exclusive right under the patent within and throughout a specified territory. Rev. Stat. 4898. "A transfer," said the court, "of either of these three kinds of interests is an assignment, properly speaking, and vests in the assignee a title in so

much of the patent itself, with a right to sue infringers : in the second case, jointly with the assignor ; in the first and third cases, in the name of the assignee alone. Any assignment or transfer, short of one of these, is a mere license, giving the licensee no title in the patent, and no right to sue at law in his own name for an infringement."

We see no reason to qualify in any way the language of these opinions. While it is sometimes said that each claim of a patent is a separate patent, it is true only to a limited extent. Doubtless separate defences may be interposed to different claims, and some may be held to be good and others bad, but it might lead to very great confusion to permit a patentee to split up his title within the same territory into as many different parts as there are claims. If he could do this, his assignees would have the same right they now have to assign the title to certain territory, and the legal title to the patent might thus be distributed among a hundred persons at the same time. Such a division of the legal title would also be provocative of litigation among the assignees themselves as to the exact boundaries of their respective titles. We think the so-called assignment to Kirkpatrick was a mere license, and did not vest in him or his assigns the legal title to the second claim nor the right to sue in his own name upon it.

This disposition of the assignment renders it unnecessary to discuss the validity of the patent.

(2) Patent No. 314,142, to Thomas J. Kirkpatrick, issued March 17, 1885, contains four claims, the first one of which is relied upon to sustain this bill. This claim is as follows :

"1. The combination, with the perch or backbone of a bicycle or similar vehicle, of independent front and rear springs secured to said perch or backbone, and a flexible seat suspended directly from said springs at the front and rear, respectively, substantially as set forth."

"My invention," says the patentee in his specification, "consists in a peculiar arrangement of front and rear springs secured independently to the reach or 'backbone' of the machine in connection with the flexible seat suspended at the front and rear from said springs. . . . These springs, D

and E, are secured independently to the perch or backbone A, each spring being preferably secured as nearly as practicable under the end of the saddle to which said spring is attached. . . . In order to extend the suspended flexible seat as far forward as possible, and at the same time secure the full elasticity of the forward spring D, I construct the said spring with two wings, $b^1 b^2$, adapted to extend forward of the head B, and turn upward and backward to connect with the forward end of the seat C."

If this claim be extended, as is insisted by the appellant, to include every device by which a flexible seat is suspended upon the perch or backbone of a bicycle by independent springs at the front and rear ends of such seat, it is anticipated by several patents put in evidence by the defendants. Thus in the Fowler patent of 1880, a saddle seat is shown to be suspended above the perch or backbone upon a coil spring in front and with a grooved leaf spring in the rear, these springs being entirely independent of each other. In the Fowler patent of 1881 there is exhibited a saddle seat suspended from the backbone by independent front and rear springs, though there may be some doubt whether the seat in either of these cases is flexible. There is no doubt, however, that in the Veeder patent of 1882 there is a flexible saddle seat carried upon the perch or backbone of a bicycle, and resting upon two parts of the same spring, which, however, cannot be said to be entirely independent of each other. Evidently, however, the feature of flexibility cuts no figure in this case, since it would manifestly require no invention to adapt the Fowler saddles to a flexible seat.

In view of these patents, the Kirkpatrick patent cannot be sustained for the combination indicated without the qualification, "substantially as set forth," at the end of the claim; which limits it to a forward spring adapted to extend forward of the head and turn upward and backward to connect with the forward end of the seat; the effect of this being to throw the seat as far forward as possible, and to render unnecessary any intervening mechanism or device between the forward end of the saddle and the perch.

Limited in this way, it is clear the defendants do not infringe, making use, as they do, of springs, which are not only quite different from the Kirkpatrick springs in their design, but omit the important particular of projecting in front of the steering post.

There was no error in the action of the court below, and its decree is, therefore,                                    *Affirmed.*