## BORNE SCRYMSER CO. v. GAFFNEY MFG. CO. et al.

### No. 347.

District Court, W. D. South Carolina.

March 14, 1933.

Oscar W. Jeffery, of New York City (Reginald Hicks and Stephen Nettles, of Greenville, S. C., on the brief), for plaintiff.

Brady Cole, of Houston, Tex. (Drury W. Cooper, of New York City, Frank G. Tompkins, of Columbia, S. C., Donald Brooks and Cooper, Kerr & Dunham, all of New York City, Baker, Botts, Andrews & Wharton, of Houston, Tex., and Tompkins & Gary, of Columbia, S. C., on the brief), for defendants.

GLENN, District Judge.

This is a suit in equity in which the defendants are charged with infringing United States letters patent No. 1,550,396, issued August 18, 1925, on the invention of one Smith and entitled "Method of Oiling Cotton Raw Stock." The bill of complaint, in the usual form, was filed on or about July 11, 1932. The defendants filed their joint answer on or about September 19, 1932, also in the usual form, but in addition asserting by way of counterclaim, on behalf of defendant the Texas Company that plaintiff was guilty of infringement of United States letters patent No. 1,401,376, issued December 27, 1921, on the invention of one Thompson and entitled "Fibre Conditioning Process and Apparatus."

The Texas Company is not the legal owner of the Thompson patent, but appears to have become, subsequently to the commencement of this suit, the "owner of an exclusive license under said patent to Thompson for the cotton and rayon industries," the patent and each of its claims being concerned with the treatment of textile fibers generally and not limited to the two mentioned.

Plaintiff moved to strike the Texas Company's counterclaim on the grounds: First, that it was acquired after the filing of the bill, and for that reason may not be asserted; and,

second, that in any event the Texas Company's interest in the Thompson patent is insufficient to support a suit for infringement upon it.

A few days before the hearing of plaintiff's motion, leave was sought by Parks-Cramer Company, a Massachusetts corporation, to intervene herein, in support of the counterclaim, as the owner "with the exception of the equitable title created in the Texas Company—of the entire equitable title to the said Thompson patent, as well as the owner (without any exceptions) of the complete legal title."

Briefs have been filed on behalf of the parties with respect both to plaintiff's motion to strike and Parks-Cramer Company's petition for leave to intervene.

■ It appears that plaintiff is a corporation of New Jersey and has no place of business in this district, but, having elected to institute its suit here, it is subject to the jurisdiction of this court as respects any proper counterclaim which may be set up against it (General Electric Co. v. Marvel Rare Metals Co., 287 U. S. 430, 53 S. Ct. 202, 77 L. Ed. 408, U. S. Supreme Court opinion filed December 12, 1932), and we are therefore concerned primarily with the propriety of the counterclaim.

■ The trouble with the defendants' position is that the Texas Company is barred from setting up its counterclaim because at the time of the commencement of this suit, it had, by the admission in and inferences from its pleadings, no title to the patent for the infringement of which it seeks to bring its counterclaim.

1. While the question as to whether a cause of action originally arising in favor of a stranger and acquired by a defendant, after suit brought, may be set up by such defendant by way of counterclaim, does not appear to have been specifically passed upon in the federal courts, many state courts, including those of South Carolina, have held that the practice of setting up counterclaims was "never intended to permit a defendant" after suit brought "to buy up, for purposes of litigation and defense, doubtful or other claims against the plaintiff" (Moody v. Steele, 11 N. Y. Civ. Proc. R. 205); and that to permit it "would encourage and sanction the practice of buying up claims against a plaintiff which, instead of promoting, would be a perversion of justice" (Enter v. Quesse, 30 S. C. 126, 8 S. E. 796, 14 Am. St. Rep. 891). With these views we concur. Whether or not the English decisions relied on by the defendant are applicable under Equity Rule 30 (28 USCA § 723) we are of the opinion that the situations with which they were concerned are not at all like the facts here.

■ The defendant contends that its counterclaim is one "arising out of the transaction which is the subject-matter of the suit" and that Equity Rule 30 therefore requires it to be set up or be forever barred. To this we cannot agree. The "transaction" is defendant's alleged infringement of plaintiff's patent, and whether the Smith and Thompson patents themselves relate to similar subject-matter is immaterial. See Terry Steam Turbine Co. v. B. F. Sturtevant Co. (D. C.) 204 F. 103; Electric Boat Co. v. Lake Torpedo Boat Co. (D. C.) 215 F. 377; Christensen et al. v. Westinghouse Traction Brake Co. (D. C.) 235 F. 898; Cooling Tower Co. v. C. F. Braun & Co. (C. C. A.) 1 F.(2d) 178; McCabe & Schoenholz, Inc., v. Frank J. Quigan, Inc. (D. C.) 36 F.(2d) 1000. Furthermore, the acts of which plaintiff complains occurred, of necessity, prior to the commencement of the suit, at which time the Texas Company had no interest whatsoever in the Thompson patent. In other words, it is not and cannot be urged that the acts of the Texas Company here complained of were done under the protection of title to or license under the Thompson patent. The only apparent connection between the transaction which is the subject of suit and the transaction which is the subject of the counterclaim appears to be the one which the Texas Company itself created by acquiring the aforesaid license, and even that after suit brought.

■ 2. As respects the Texas Company's title, we are of the opinion that here also plaintiff's point is well taken. While it is doubtless true that a court of equity will exercise its extraordinary powers in order to prevent a failure of justice and that in so doing courts have recognized the necessity of affording relief to patent licensees who would otherwise be without remedy, no such situation is presented here and the exception, illustrated in the cases on which defendant relies, cannot be substituted for the rule. While termed an "exclusive license" (words which doubtless have given rise to much confusion), the interest of the Texas Company in the Thompson patent is manifestly a limited one as respects the monopoly which that patent purports to afford. To recognize such an interest under the circumstances at bar would be to countenance the subdivision of the Thompson patent into as many independent and assertible submonopolies as there are different kinds of

textile fibers. However binding such an arrangement may be between the parties agreeing to it, it does not give the beneficiary such title as is required of him to support a suit in equity, alone, for infringement of so much of the patent as he is interested in. See Waterman v. Mackenzie, 138 U. S. 252, 11 S. Ct. 334, 34 L. Ed. 923; Crown Die & Tool Co. v. Nye Tool & Machine Works, 261 U. S. 24, 43 S. Ct. 254, 67 L. Ed. 516; Jaros Hygienic Underwear Co. v. Fleece Hygienic Underwear Co. (C. C.) 60 F. 622; Suydam v. Day, 23 F. Cas. page 473, No. 13,654; Pope Mfg. Co. v. Gormully, etc., Co., 144 U. S. 248, 12 S. Ct. 641, 36 L. Ed. 423; Gayler v. Wilder, 10 How. 477, 13 L. Ed. 504. Therefore, we must hold that the exclusive license to use the Thompson patent in the cotton and rayon industries does not give to the Texas Company such an interest in the patent as to allow it to bring an action for infringement thereof. If it cannot bring an action for the infringement of the Thompson patent, it certainly cannot set up a counterclaim based on such defective title.

We are of the opinion that the Texas Company is barred in limine by these considerations.

As respects the allowance of intervention, Equity Rule 37 (28 USCA § 723) gives the court a large discretion. But however strong a claimant's right to intervene is, there must be a suit in good standing before he can intervene. An intervening defendant not only cannot deny the propriety of the action in which he is intervening (Board of Drainage Com'rs of Pender County, etc., v. Lafayette Southside Bank of St. Louis (C. C. A.) 27 F.(2d) 286), but he cannot, by the strength of his position, breathe life into a dead lawsuit. It is true that if the original defendant has some standing in the court, his position may be strengthened by that of an intervening defendant, but the intervening defendant cannot tie his claim to another claim which has no standing at all and by reason of the intervenor's legal position give a proper standing in the court to the original defendant, who, by virtue of his own position, has none.

"It may be that the right of an intervening party defendant with respect to setting up counterclaims is, under equity rule 30, as broad as that of an original party defendant. But to permit, over the objection of the plaintiffs, a person to intervene not pro interesse suo only but as a party defendant (as to which see Chester v. Life Ass'n of America (C. C.) 4 F. 487), and then to permit such intervening party defendant to set up against the plaintiffs *a counterclaim for affirmative relief that is not available to the original defendant, and to which the original defendant is not entitled,* would be conferring upon such third person broad rights, indeed, with respect to the litigation, and might be extending the rights of such third person beyond the point intended by equity rules 30 and 37. See Curran v. St. Charles Car Co. (C. C.) 32 F. 835." Allington et al. v. Shevlin-Hixon Co., 2 F.(2d) 747, 749 (D. C. Delaware).

See, also, Angier et al. v. Anaconda Wire & Cable Co. (D. C.) 48 F.(2d) 612; Atlas Underwear Co. v. Cooper Underwear Co. (D. C.) 210 F. 347; Leaver v. K. & L. Box & Lumber Co. (D. C.) 6 F.(2d) 666.

It may be contended that a court would have discretion to allow an intervener to aid the original defendant in such a far-reaching way, but if that be so we do not think that the instant case is a proper case for the exercise of such discretion. Neither the petition nor the proposed bill of intervention concerns anything but the subject-matter of the counterclaim and the conclusion is irresistible that the Texas Company, realizing the weakness of its position, has made an eleventh hour attempt to keep its counterclaim in court by getting Parks-Cramer Company to seek leave to intervene, recognizing that the latter is in a stronger legal position than the Texas Company itself.

Plaintiff's motion to strike is granted, and the petition of Parks-Cramer Company for leave to intervene is denied.