**CHANNEL MASTER CORPORATION,**
**Plaintiff,**

v.

**JFD ELECTRONICS CORPORATION,**
**University of Illinois Foundation, and**
**University of Illinois, Defendants.**

**No. 66–C–416.**

United States District Court
E. D. New York.

Nov. 4, 1966.

Reargument Denied Jan. 13, 1967.

See 262 F.Supp. 292.

[1]. Kronick v. United States, 343 F.2d 436, 441 (9th Cir. 1965).

Darby & Darby, New York City, for plaintiff.   Morris Relson, New York City, of counsel.

Ostrolenk, Faber, Cerb & Soffen, New York City, for defendant, JFD Electronics Corporation.   Sidney G. Faber, New York City, of counsel.

BARTELS, District Judge.

This action was brought by Channel Master Corporation against JFD Electronics Corporation, University of Illinois Foundation (Foundation), and University of Illinois (University) under the patent laws of the United States for a declaratory judgment of patent invalid-

ity, non-infringement and unenforceability. The complaint consists of two counts, in the first of which plaintiff seeks a declaratory judgment that its "CROSSFIRE" antennas do not infringe defendant's patent rights, and in the second of which plaintiff seeks damages and injunctive relief for (i) alleged patent mismarking by defendant, and (ii) unfair competition by defendant in that it has falsely accused plaintiff of copying defendant's antenna. A motion made by University and Foundation to dismiss the action as against them upon the ground of improper service was granted, leaving JFD Electronics Corporation as the sole defendant.

In Count I the complaint alleges that Foundation is the record owner of the Dwight E. Isbell Patent No. 3,210,767 entitled "Frequency Independent Unidirectional Antennas", which it licensed to the defendant under an exclusive license agreement dated December 1, 1965; that defendant is engaged in making and selling antennas under said patent in competition with plaintiff, in the course of which it accused plaintiff of infringing the Isbell patent by making and selling, without a license, radio and television antennas embodying the alleged invention of that patent, and that the Isbell patent is directed to a type of antenna known as log-periodic, whereas plaintiff manufactures and sells antennas under the trademark "CROSSFIRE" (the subject of plaintiff's U. S. Patent No. 3,086,206 and the reissue thereof, No. 25,604) which it states are not log-periodic and thereby do not infringe the Isbell patent, which it also claims is invalid.

In Count II the complaint alleges that defendant manufactures certain antennas which it represents in its advertising and sales promotion statements as log-periodic antennas operating according to a patented log-periodic formula, whereas said antennas are not log-periodic and do not operate according to any such formula or patent; that defendant has caused to be marked upon its antennas (and particularly its LPV and LPV–U

lines), upon cartons therefor, and in literature accompanying the same, the word "Patent", and has represented that they were covered by certain issued or pending patents, whereas, in fact, they were not so covered and did not embody any patented inventions; and finally, that defendant has unfairly competed with plaintiff by libelling and disparaging plaintiff's "CROSSFIRE" antennas as imitations of defendant's allegedly log-periodic antennas, and also by falsely claiming that its antennas were original patented designs and that plaintiff's patent was rejected, all to plaintiff's damage.

According to the license agreement which was submitted with the motion papers, the Foundation granted to the defendant, among others, the following rights: (a) An exclusive non-transferrable right and license to make, use or sell antennas *only in the field of receiving antennas for TV and FM broadcasting stations and antennas for amateur and citizens band transmission* and reception in the United States and in all foreign countries; (b) an option to acquire a non-exclusive license for all *other fields* than the field of the exclusive license; (c) the right to grant sublicenses upon its exclusive license; (d) the right to institute suit for infringement upon the failure of the Foundation to bring suit within thirty days after requesting the Foundation to do so; (e) the right to cancel the agreement upon ninety days' notice; and (f) upon expiration of the agreement, an option to renew the same for two additional terms (emphasis supplied).

Defendant moves under Rule 12(b) (7), Fed.Rules Civ.Proc., 28 U.S.C.A., to dismiss Count I for failure to join an indispensable party, namely, Foundation, the owner of the patent; under Rule 12(b) (6), Fed.Rules Civ.Proc., 28 U.S. C.A., to dismiss that portion of Count II alleging patent mismarking because of the absence of criminal intent to sustain the action, and under Rule 12(b) (1), Fed.Rules Civ.Proc., 28 U.S.C.A., to dismiss the remaining portion of Count

II alleging unfair competition for lack of jurisdiction over the subject-matter. As an alternative to the above, defendant moves under 28 U.S.C.A. § 1404(a) for a change of venue and transfer to the Northern District of Illinois, Eastern Division.

## Indispensable Party

■■ In view of the fact that the license to the defendant does not cover the entire field of the Isbell patent, the Court concludes that Count I of the complaint must be dismissed for lack of an indispensable party. The narrow question here is whether the defendant's interest in this patent is sufficient to enable it to bring the action for infringement without joining Foundation. It is clear that if defendant were in the position of an assignee of the Isbell patent, it would have the implied right to bring suit for infringement without such joinder. The leading case of Waterman v. Mackenzie, 1891, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923, teaches that the monopoly granted by the patent laws cannot be divided into parts, except as authorized by those laws, and that the patentee may assign (1) the whole patent, (2) an undivided part or share of that patent, or (3) the exclusive right under the patent "to the whole or any specified part of the United States" (35 U.S.C.A. § 261). "* * * Any assignment or transfer, short of one of these, is a mere license, giving the licensee no title in the patent, and no right to sue at law in his own name for an infringement" (Waterman v. Mackenzie, supra, p. 255, 11 S.Ct. p. 335). In accordance with these principles, an exclusive license to make, use and vend is in the same category as an assignment on the theory that the licensor holds title to the patent in trust for such licensee. Even though the exclusive license is restricted to a specified territory or covers less than the full life of the patent, this still remains true. Wilson v. Rousseau, 1846, 4 How. 646, 11 L.Ed. 1141; Hartford National Bank & Trust Co. v. Henry L. Crowley & Co., 3 Cir. 1955, 219 F.2d 568.

While the license in this case is an exclusive one to manufacture, use and vend, it covers only the field of receiving antennas for TV and FM broadcasting stations and antennas for amateur and citizens band transmission and reception. It does not include the field of "radar antennas, antennas for military application including communication, AM broadcasting and receiving antennas", which is also covered by the Isbell and other patents upon which the license rests.[1] Plaintiff claims that this is immaterial because the defendant has exclusive rights in the exact field covered by the suit, citing in support thereof Pratt and Whitney Company v. United States, 1957, 153 F.Supp. 409, 139 Ct.Cl. 540. While that case upholds the plaintiff's contention, its authority is contrary to the decision in Etherington v. Hardee, 5 Cir. 1961, 290 F.2d 28, and Pope Manuf'g Co. v. Gormully & Jeffery Manuf'g Co., 1892, 144 U.S. 248, 12 S. Ct. 641, 36 L.Ed. 423. In the latter case the court held that the grant of a limited use under a patent is a mere license which is insufficient to enable the licensee to maintain an infringement suit without joinder of the legal title-holder, concluding that "* * * it might lead to very great confusion to permit a patentee to split up his title within the same territory into as many different parts as there are claims. * * *" (p. 252, 12 S.Ct. p. 643). To the same effect is American Chemical Paint Company v. Smith, E.D.Pa.1955, 131 F.Supp. 734. There is a distinction between an exclusive license under a geographical or time limitation and an exclusive license under a use limitation. The reason for permitting a licensee to sue alone in the first two cases is based upon the theory that the licensor has in substance granted an assignment to the licensee of the whole patent and the interests of the

---

1. The exclusions are based upon representations in the defendant's brief, which plaintiff does not deny.

licensor and licensee in protecting the same are identical, even though there is a geographical or time limitation in the license. When, however, the exclusive license involves only part of the patent, the interest of a licensee in defending the validity of that part may not be identical with the interest of the licensor in defending the whole. Consequently, in his absence, his interest in the whole should not be subjected to the risk of the stain of invalidity in attack upon the part.

■ Another reason why the licensee cannot be required to defend this suit alone is the absence of an *independent* right in the licensee to institute an action for patent infringement. Caldwell Manufacturing Co. v. Unique Balance Co., S.D.N.Y.1955, 18 F.R.D. 258. In that case it was held that the licensor-patentee was an indispensable party to a suit against a licensee to manufacture and vend in one field because the licensee's right to bring suit for infringement sprung into existence only after the licensor-patentee failed to do so. The action was accordingly transferred to another district where the validity of the patent and the issue of infringement could be litigated in one suit in which all parties would be present. Relying on the presence or absence of licensee's right to bring suit to protect the patent as the true test rather than the classification of the litigants as " 'licensees' or 'assignees,' " (p. 263), Judge Herlands said: " * * * In the absence of an independent right to bring an action for patent infringement, defendant-licensee herein has no independent right to defend a suit seeking a declaration as to the validity of the licensed patent." (p. 264). Assuming, without confirming, that an independent right [2] in a non-exclusive licensee would be sufficient to bring suit involving invalidity and infringement without joinder of the licensor-patentee, no such independent

right exists here because the defendant's right to institute such a suit arises only if Foundation fails to do so after a lapse of thirty days.

■ Since the defendant cannot maintain the suit without the presence of the patent owner, there is an additional ground for dismissal under the Declaratory Judgments Act, 28 U.S.C.A. § 400, because of the absence of an "actual controversy" as required by the Act. Contracting Division, etc. v. New York Life Ins. Co., 2 Cir. 1940, 113 F.2d 864. Even if it were not clear that the patent owner's presence were required, the Court nevertheless has the right, in its discretion, to refuse to exercise its jurisdiction and dismiss the proceeding where, as here, there is a substantial doubt whether the declaratory judgment would resolve the controversy. Aetna Casualty & Surety Co. v. Quarles, 4 Cir. 1937, 92 F.2d 321; Caldwell Manufacturing Co. v. Unique Balance Co., supra; Technical Tape Corp. v. Minnesota Mining & Mfg. Co., S.D.N.Y.1955, 135 F. Supp. 505.

■ At great length plaintiff argues that the recent amendment of Rule 19 of the Federal Rules of Civil Procedure, 28 U.S.C.A., and in particular subdivision (b), requires a finding that Foundation is not an indispensable party and hence there should be no dismissal of Count I but "in equity and good conscience the action should proceed among the parties", asserting that Foundation will not be adversely affected by any judgment. With this the Court does not agree. Plaintiff misconceives the effect of the present Rule 19. subdivision (b). While the new subdivision sets forth four relevant factors as the correct criteria for deciding whether the action should proceed or be dismissed and provides for avoiding or lessening prejudice by the "shaping of relief", this subdivision is not at variance with the settled authori-

---

2. "Independent right" means a right to bring suit independent of any condition precedent or any permission or control of the licensor-patentee. If the licensee's right springs into existence only after the licensor has failed to exercise his right to bring suit, the licensee's right is not independent but conditional.

ties requiring dismissal where a party not joined may be seriously prejudiced through disposition of the action in his absence. Here any decision against the validity of the patent would adversely affect Foundation as to its remaining unlicensed patent claims and any relief granted to the plaintiff in such a case would not prevent relitigation of the same issue by Foundation. No shaping of relief or other measures would cure such an inadequacy. Furthermore, plaintiff has an adequate remedy in another jurisdiction where all parties may be served and brought before the court. The adjudicated cases earlier cited demonstrate why, under the present circumstances, Foundation is an indispensable party and Rule 19(b) does not require the action to proceed without joinder of such á party. It simply sharpens the definition of "indispensable party" in order to eliminate any technical approach to the problem, leaving the decision to proceed without joinder to the discretion of the Court. Cf., Provident Tradesmens Bank and Trust Company et al. v. Lumbermens Mutual Casualty Company, 3 Cir. 1966, 365 F.2d 802, where the lack of an indispensable party was deemed to be a substantive defect.

### Patent Mismarking

■■ The portion of Count II alleging patent mismarkings is predicated upon an alleged violation of 35 U.S.C.A. § 292, which permits any person to sue for a penalty of $500 for each offense under the statute involving false marking with an intent or purpose to deceive: Plaintiff alleges that the mismarkings were knowingly made by the defendant with intent to mislead and deceive the public. The complaint therefore sets forth a good cause of action. Apparently the only basis for the defendant's motion is its claim of lack of intent. This appears from the affidavit of Edward Finkel, defendant's vice-president, who asserts that he believes that the patent markings and representations were accurate and that they were placed upon the antennas in conformity with instruc-

tions received from Foundation under the license agreement and that under no circumstances was there an intent to deceive or to falsely mark the antennas. Hence, he contends that the necessary element of intent was lacking. Obviously, this motion cannot be granted under Rule 12(b) (6); at best, it can be considered only as a motion for summary judgment. In this category it must also be denied because the statements in the complaint and the affidavit of defendant's vice-president, Edward Finkel, present a genuine issue as to a material fact (Rule 56, Fed.Rules Civ.Proc., 28 U.S.C.A.). Smith Welding Equipment Corp. v. Pearl et al., W.D.Pa.1956, 21 F.R.D. 196.

### Unfair Competition

There remains for disposition the motion to dismiss that portion of Count II alleging unfair competition upon the ground that the Court lacks jurisdiction over the subject matter.

■ In this portion of Count II plaintiff splits its claim of unfair competition into two parts, (i) false representations by defendant to the effect that its antennas are log-periodic and are covered by a patented periodic formula and by certain enumerated patents, and (ii) false representations by defendant that plaintiff's "CROSSFIRE" antennas were not original but imitations of defendant's allegedly log-periodic antennas. There is no diversity of citizenship between the parties and subject-matter jurisdiction in this Court must therefore be founded upon some Federal statute. Both categories of misrepresentations in this case relate, in one form or another, to the claim of mismarking in Count II under the patent law, 35 U.S.C.A. § 292. Jurisdiction, therefore, may rest upon the provision of 28 U.S.C.A. § 1338(b), which reads as follows:

"The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent or trade-mark laws."

The claims of unfair competition are in accordance with the terms of the above section, joined with a substantial and related claim under the patent law. The fact that 35 U.S.C.A. § 292 is essentially penal in character does not eliminate it as a related claim under the patent law described in Section 1338(b). In order to avoid piecemeal litigation a broader view has been taken in this circuit of the pendent jurisdiction of Federal courts over non-Federal claims which are joined with substantial Federal claims. To establish the existence of a substantial and related claim under Section 1338(b), virtual identity of proof is not required and it is sufficient if there is a considerable overlap in the factual basis of the two claims. Maternally Yours v. Your Maternity Shop, 2 Cir. 1956, 234 F.2d 538. For instance, the proof that plaintiff adduces to show mismarking under 35 U.S.C.A. § 292, will involve the coverage of the Isbell patent as well as the defendant's intent. Substantially the same proof will be necessary to establish that defendant falsely claimed that its antennas were log-periodic and covered by certain specifically numbered patents as set forth in the first category of misrepresentations. Likewise, part of the same proof will be necessary to establish that plaintiff's "CROSSFIRE" antennas were not log-periodic antennas and were not covered by the Isbell patent and hence not imitations of defendant's antennas as claimed in the second category of false representations.

Although the complaint does not predicate jurisdiction upon 15 U.S.C.A. § 1125 (a) [3] [§ 43(a), Lanham Act], jurisdiction may be rested upon that section as to the first category of misrepresentations. The prohibition with respect to a false designation of origin or false description with respect to goods or services or containers for goods, is not limited to designation and description relative to origin alone, as argued by the defendant. On the contrary, the prohibition applies to all such false descriptions and designations with respect to such goods and services entering into interstate commerce. L'Aiglon Apparel v. Lana Lobell, Inc., 3 Cir. 1954, 214 F.2d 649.

For the above reasons, the motion to dismiss Count II must be denied.

### Motion to Transfer

In view of the fact that Count I will be dismissed for lack of an indispensable party, the most important reasons suggested by the defendant for change of venue to the Northern District of Illinois, Eastern Division, have disappeared. As the case now stands, the defendant has failed to show that the balance of convenience, either for the parties or witnesses, is sufficiently strong in its favor to justify a transfer of the case under 28 U.S.C.A. § 1404(a) to another jurisdiction. Hence, the plaintiff's choice of venue should not be disturbed. Gulf Oil Corporation v. Gilbert, 1947, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055; Ford Motor Co. v. Ryan, 2 Cir. 1950, 182 F.2d 329. The interest of justice therefore requires that this application be denied.

Settle order in accordance with the above within ten (10) days on two (2) days' notice.

3. This section reads as follows:
   "Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation."