**NOMOS CORPORATION, Plaintiff and Counter–Defendant,**

v.

**ZMED, INC., Defendant and Counter–Claimant.**

**No. 01–CV–10765–MEL.**

United States District Court, D. Massachusetts.

Oct. 9, 2001.

Martin J. O'Donnell, Michael E. Attaya, Cesari & McKenna, LLP, Boston, Clarence E. Eriksen, Samer Al–Azem, McGlinchey Stafford P.L.L.C., Houston, TX, for Nomos Corporation, Plaintiffs.

Daniel P. Tighe, Griesinger, Walsh & Maffei, LLP, Boston, Callie A. Bjurstrom, Peter K Hahan, Peter K. Hahn, Luce, Forward, Hamilton & Scripps LLP, Stephanie E. Kish, Luce, Forward, Hamilton & Scripps LLP, San Diego, CA, for Zmed, Inc., Defendants.

## MEMORANDUM AND ORDER

LASKER, District Judge.

ZMED has filed a counter-claim for infringement of patent no. 5,447,154 ('154). The patent is owned by the Universite Joseph Fourier (UJF), a French educational body, which licensed the patent to Praxim, which in turn licensed it to ZMED. NOMOS moves to dismiss ZMED's counter-claim on the ground that ZMED lacks standing to sue.

The motion is denied.

### I.

On May 4, 2001, NOMOS Corporation (NOMOS) filed its complaint for infringement of its patent no. 5,411,026 by defendant ZMED, Inc. (ZMED). On July 19, 2001, ZMED filed its counter-claim upon NOMOS for infringement of the '154 patent, which is owned by UJF. Previously, UJF had licensed the patent to Praxim, which in turn licensed the patent to Sofamor Danek Holdings, Inc. (SDH). Five

days before ZMED filed its counterclaim, Praxim and SDH terminated their license agreement, and Praxim subsequently licensed the patent to ZMED in an agreement dated July 14, 2001, (the Agreement) but signed August 2, 2001. NOMOS then filed the present motion. It argues that ZMED has failed to show that all substantial rights under the '154 patent have been conveyed from UJF to Praxim and in turn to ZMED, and that since ZMED has not been granted all substantial rights under the '154 patent, ZMED does not have standing to maintain its suit against NOMOS.

## II. *Motion to Dismiss*

Standing to sue for patent infringement is derived from the Patent Act, which provides that "a patentee shall have a remedy by civil action for infringement of his patent." 35 U.S.C. § 281 (1994). The Patent Act defines the term "patentee" as including "not only the patentee to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. § 100(d). The title to a patent may be transferred (also termed an "assignment") as provided by 35 U.S.C. § 261, which states that a "patentee ... may ... grant and convey an exclusive right under his application for patent, or patents, to the whole or any specific part of the United States." 35 U.S.C. § 261; *see Prima Tek II, L.L.C., v. A–Roo Co.*, 222 F.3d 1372, 1377 (Fed.Cir.2000). It has long been held that when a patentee transfers "all substantial rights" under a patent, the transferee may effectively be deemed the "patentee" under the statute, and thus has standing to bring an infringement suit in its own name. *Waterman v. Mackenzie*, 138 U.S. 252, 255, 11 S.Ct. 334, 34 L.Ed. 923 (1891); *Intellectual Prop. Dev., Inc. v. TCI Cablevision of California, Inc.*, 248 F.3d 1333, 1342 (Fed.Cir.2001); *Prima Tek II*, 222 F.3d at 1377; *Ortho Pharm.*

*Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1031 (Fed.Cir.1995); *Vaupel Textilmaschinen KG and Vaupel North America v. Meccanica Euro Italia S.P.A. and American Trim Products, Inc.*, 944 F.2d 870, 874 (Fed.Cir.1991). The "substantial rights" to a patent include the right to exclude others from making, using, or selling the invention in the United States, the right to transfer, and the right to sue. *Ortho Pharm. Corp.*, 52 F.3d at 1031; *Penril Datacomm Networks v. Rockwell Int'l Corp.*, 934 F.Supp. 708, 711–13 (D.Md. 1996).

In determining the scope of a transfer of rights, it is the legal effect of the provisions of the agreement which is dispositive, not the nomenclature of the instrument for transferring rights such as "assignment" or "license." *Vaupel*, 944 F.2d at 875. The rights retained by the grantor are also relevant. *Intellectual Prop. Dev.*, 248 F.3d at 1342.

The language of the license agreement between Praxim and ZMED provides that Praxim transfer to ZMED:

> "the exclusive worldwide right and sublicense to utilize and practice the Technology ... in order to design manufacture, have made, use, promote, market and sell, offer to sell, import, copy and distribute Licensed products throughout the world ...."

Mem. in Supp. of Pl.'s Mot. to Dismiss Def.'s Countercl. for Lack of Standing, Ex. E, ¶ 4.1 (Contract ZMED–PRAXIM–2001–11 License Agreement). Similarly, the agreement between Praxim and UJF specifies that UJF grants Praxim: "the exclusive industrial and commercial license to exploit the Patents ..." and "the exclusive industrial and commercial license to exploit the Know-how ...." Mem. in Opp'n to Pl.'s Mot. to Dismiss Def.'s Countercl. for Lack of Standing, Arts. 4–5 (Contract

UJF–PRAXIM–2000–20). The issue of law to be decided is whether, cumulatively, the provisions of the two agreements confer upon ZMED substantially all the rights of the patent, so that it has standing to assert its counterclaim.

## A. Does ZMED Have an Independent Right to Sue?

■ NOMOS argues that Praxim retains an interest in the patent which precludes ZMED acquiring standing to sue. It asserts that because the Praxim–ZMED agreement provides that Praxim and ZMED shall "jointly decide whether to defend or prosecute a claim of infringement," how to share the awarding of monetary damages, and that each party shall keep the other informed of any activity pertaining to an infringement action, ZMED does not own "all substantial rights" under the patent and therefore lacks standing to sue. NOMOS further contends that to hold that ZMED, which is an exclusive licensee possessing less than all substantial rights in the '154 patent, has standing to sue without joining Praxim and UJF in the suit "is tantamount to allowing a patent owner to effectively grant a hunting license, solely for the purpose of litigation . . . ." *Citing Prima Tek II*, 222 F.3d at 1381. NOMOS asserts that paragraph 8.3 of the Agreement is such a "hunting license" and nothing more.

ZMED responds that: (1) Praxim has not retained the right to make, use, or sell products within the scope of the Agreement; (2) Praxim has not granted any other competing licenses; and, most importantly, (3) that the Agreement provides that "Praxim and ZMED expressly agree that ZMED shall have the exclusive right to pursue NOMOS Corporation for infringement of the Technology." Mem. in Supp. of Pl.'s Mot. to Dismiss Def.'s Countercl. for Lack of Standing, Ex. E, ¶ 8.3

(Contract ZMED–PRAXIM–2001–11 License Agreement).

The quoted language of the Agreement between ZMED and Praxim unequivocally grants ZMED the exclusive right to sue NOMOS. Moreover, Praxim has unambiguously relinquished all its rights with respect to a lawsuit against NOMOS, as provided by paragraph 8.3 of the Agreement which specifies "Praxim hereby assigns to ZMED its right to sue NOMOS Corporation for infringement of U.S. Patent No. 5,447,154." Mem. in Supp. of Pl.'s Mot. to Dismiss Def.'s Countercl. for Lack of Standing, Ex. E, ¶ 8.3 (Contract ZMED–PRAXIM–2001–11 License Agreement).

NOMOS' assertion that paragraph 8.3 of the Agreement is merely a "hunting license" is without merit. It is true that in *Prima Tek II*, the court held that a contractual right-to-sue clause does not negate the statutory requirement that a licensee have substantial rights to a patent in order to bring an infringement suit in its own name. *Prima Tek II*, 222 F.3d at 1381. However, unlike the plaintiffs in *Prima Tek II*, ZMED has been granted markedly greater rights under the '154 patent than a mere contractual right to sue. Because the Praxim–ZMED agreement transfers all significant rights to ZMED, ZMED has standing to sue NOMOS on its own.

Furthermore, authorizing the "exclusive" right to sue is "particularly dispositive" that the licensee has standing to sue in its own name, and the duty to keep the transferor informed does not preclude the right to sue. *Intellectual Prop. Dev.*, 248 F.3d at 1344; *Vaupel*, 944 F.2d at 875.

## B. UJF's Interest in the '154 patent

■ NOMOS contends that ZMED does not have standing to sue because the agreement between SDH and Praxim con-

tains two provisions which imply that UJF retains an interest in and/or lien on the '154 patent. It follows, according to NOMOS, that UJF has not transferred all substantial rights in the '154 patent to Praxim, which therefore could not have conveyed all such rights to ZMED. Consequently, argues NOMOS, ZMED is merely a "bare" licensee with no standing to sue in its own name.

NOMOS further contends that the Praxim–ZMED license agreement does not transfer to ZMED the substantial rights of the '154 patent, because Praxim retains the right to terminate the exclusive nature of the Agreement if ZMED fails to pay royalties. Moreover, NOMOS stresses that ZMED's rights are curtailed by the provision that Praxim retains the right to terminate the Agreement in the event of ZMED's breach of contract, and that ZMED must obtain Praxim's prior written consent before it assigns its rights in the '154 patent.

ZMED responds that the agreement between UJF and Praxim specifies that UJF retains only a reversionary interest in the '154 patent and only in the event that Praxim breaches the contract or is bankrupt. ZMED argues that retaining a reversionary right in a patent does not transform the grant into a mere license.

Retention of some rights by the transferor (such as a reversionary right) does not bar a transferee from independently bringing an infringement suit in a case such as this where the patentee does not retain any of the substantial rights. *Prima Tek II*, 222 F.3d at 1378–79 (a termination clause whereby the license automatically terminates if licensee files for bankruptcy is "entirely consistent with an assignment" and does not preclude the licensee from having standing to sue in its own name); *Vaupel*, 944 F.2d at 875 (agreement by which patentee retained:

(1) a veto right on sublicensing; (2) the right to obtain patents on the invention in other countries; (3) a reversionary right to the patent in event of bankruptcy or termination of production; and (4) a right to receive infringement damages, were all reserved rights which were not so substantial as to reduce the grant to a mere license or indicate an intent not to transfer all substantial rights).

The language of the agreements between UJF and Praxim, and between Praxim and ZMED, establishes that all significant rights under the '154 patent have been transferred from UJF to Praxim and subsequently from Praxim to ZMED. That UJF retains peripheral rights, such as the rights to be informed and to intervene, does not negate the fact that Praxim was granted substantial rights, which in turn granted such substantial rights to ZMED.

Nor does Praxim's right to convert the license to a non-exclusive license on failure to pay royalties affect the strength of the grant. *Vaupel*, 944 F.2d at 875 (termination provisions do not preclude a licensee from having standing to sue under a patent merely because a condition subsequent would terminate an agreement). Finally, the provision in the Praxim–ZMED agreement that ZMED must obtain written consent from Praxim prior to assigning its rights is at most "a minor derogation from the grant of rights," which does not interfere substantially with the full use of the exclusive right of the patent. *Vaupel*, 944 F.2d at 875.

### C. The "Field of Use" Limitation in the Agreement

█ NOMOS contends that even if UJF has conveyed all substantial rights in the '154 patent to Praxim, ZMED did not receive all substantial rights from Praxim

because the Praxim–ZMED agreement contains a "field-of-use" limitation.

ZMED answers that even as an exclusive licensee for a limited use, it has standing to sue for infringement when the patent owner has actual notice of the suit and expressly declines to participate. *Brunswick Corp. v. United States*, 22 Cl.Ct. 278, 282–83 (1991).

The parties disagree on which precedent controls. ZMED cites *Pratt & Whitney Co. v. United States*, 139 Ct.Cl. 540, 153 F.Supp. 409 (1957), as the controlling precedent and argues that an exclusive licensee for a specified purpose or use has the right to maintain an action for infringement within this specified purpose or use. In response, NOMOS cites *Channel Master Corp. v. JFD Elect. Corp.*, 260 F.Supp. 568, 571 (E.D.N.Y.1966), which held that *Pratt & Whitney* is trumped by *Etherington v. Hardee*, 290 F.2d 28 (5th Cir.1961) and *Pope Mfg. Co. v. Gormully & Jeffery Mfg. Co.*, 144 U.S. 248, 12 S.Ct. 641, 36 L.Ed. 423 (1892).

In these cases the courts were concerned: (1) with preventing a patentee from splitting a patent into many different parts, and assigning title in the patent to several persons, which would create "confusion"; and (2) that a licensee with an interest in only part of a patent would not have the same interest in defending the whole patent as would the patentee.

In the case at hand, ZMED has been granted considerably more than a mere interest in part of the '154 patent. The Praxim–ZMED agreement grants ZMED an "exclusive, worldwide right" to the "Technology" which includes "all of the patents, patent applications and other proprietary technology ... owned by UJF." Consequently, ZMED will have the same interest in protecting the whole of the '154 patent as would UJF. Moreover, ZMED has provided declarations that both Prax-

im and UJF attest that they do not wish to participate in this lawsuit. In addition, Praxim and UJF have granted ZMED full authority to counter-sue NOMOS independently for infringement of the '154 patent, and have agreed to be bound by any judgments rendered in this case.

### D. The Termination Agreement between SDH and Praxim

▮ NOMOS argues that because the termination agreement between Praxim and SDH was not signed until August 2, 2001, the license agreement between Praxim and SDH was still in force on July 19, 2001, the date ZMED filed its counterclaim. According to NOMOS, the termination agreement signed on August 2, 2001, does not have retroactive effect and therefore, when ZMED filed its counterclaim on July 19, 2001, ZMED did not have standing to sue in its own name.

NOMOS also notes that the SDH–Praxim license agreement contains a survival clause that specifies: "[t]he specific obligations contained in Sections 2, 3, 7.4, 9, 10.4, 11, 12, 13, 14, and 15 shall survive and continue beyond the termination of this Agreement to the extent necessary to accomplish the purposes of those Sections." Mem. in Supp. of Pl.'s Mot. to Dismiss Def.'s Countercl. for Lack of Standing, Ex. H, ¶ 10.3 (Contract SDH–PRAXIM–1999–01 License Agreement).

ZMED responds that while the Praxim–SDH termination agreement may not have been signed until August 2, 2001, the language of the agreement expressly establishes that "the License Agreement [between SDH and Praxim] shall terminate effective July 14, 2001, ...." Mem. in Opp'n to Pl.'s Mot. to Dismiss Def.'s Countercl. for Lack of Standing (Termination Agreement). Therefore, ZMED concludes it had standing to sue when it filed its

counter-claim. ZMED also contends that the fact that SDH may have remaining duties under its agreement with Praxim is irrelevant in determining ZMED's rights.

Even if it were the case that the license agreement between SDH and Praxim was not, as a matter of law, terminated as of July 19, 2001, ZMED can eliminate that arguable problem by refiling its counter-claim.

### III.

Because ZMED has standing to sue under the '154 patent, the motion to dismiss is denied.

It is so ordered.