# United States Court of Appeals for the Federal Circuit

2007-1034

INTERNATIONAL GAMCO, INC.,

Plaintiff/Counterclaim Defendant-Appellee,

and

JOHN ADAMS and SCOTT HENNEMAN,

Counterclaim Defendants-Appellees,

and

OASIS TECHNOLOGIES, INC.,

Counterclaim Defendant,

v.

MULTIMEDIA GAMES, INC.,

Defendant/Counterclaimant-Appellant.

John P. Passarelli, Kutak Rock LLP, of Omaha, Nebraska, argued for plaintiff/counterclaim defendant-appellee and counterclaim defendants-appellees. On the brief were Jeffrey F. Craft and Paul D. Chancellor, Jackson, DeMarco, Tidus & Peckenpaugh, of Westlake Village, California.

Charles A. Bird, Luce, Forward, Hamilton & Scripps LLP, of San Diego, California, argued for defendant/counterclaimant-appellant. With him on the brief was Callie A. Bjurstrom.

Appealed from: United States District Court for the Southern District of California

Senior Judge Rudi M. Brewster

# United States Court of Appeals for the Federal Circuit

2007-1034

INTERNATIONAL GAMCO, INC.,

Plaintiff/Counterclaim Defendant-
Appellee,

and

JOHN ADAMS and SCOTT HENNEMAN,

Counterclaim Defendants-
Appellees,

and

OASIS TECHNOLOGIES, INC.,

Counterclaim Defendant,

v.

MULTIMEDIA GAMES, INC.,

Defendant/Counterclaimant-
Appellant.

_____

DECIDED: October 15, 2007

_____

Before RADER, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and MOORE, Circuit Judge.

Opinion for the court filed by Circuit Judge RADER. Opinion dubitante filed by Senior Circuit Judge FRIEDMAN.

RADER, Circuit Judge.

The United States District Court for the Southern District of California certified this case for an interlocutory appeal. International Gamco, Inc. ("Gamco") possesses an "exclusive enterprise license" (an amalgam of an exclusive territorial license and an exclusive field of use license) and seeks on the basis of that license to sue Multimedia Games, Inc. ("Multimedia"). The trial court declined to dismiss the case and certified the question of licensee standing to this court. Because this court concludes that an exclusive enterprise licensee, like a field of use licensee, does not hold all substantial rights in the licensed patent within the licensed territory, this court reverses the district court's denial of the defendant's motion to dismiss.

I

U.S. Patent No. 5,324,035 ("the '035 patent") claims a gaming system network configured to allow multiple players to engage in games drawn from a finite and centrally-stored pool of game plays, including predetermined numbers of winning and losing plays. Specifically, claim 1 of the '035 patent claims:

> 1. A gaming system network comprising:
> a master processing unit, the master processing unit operative to distribute game plays from a finite pool of game plays
> a memory device coupled to the master processing unit, the memory device operative to store at least one finite pool of game plays, each finite pool containing a predefined number of winning and loading play records wherein each game play record contains an indication of whether the particular play constitutes a winning or losing play and the amount won;
> a communication interface coupled to the master processing unit;
> a plurality of slave terminals, each slave terminal coupled to the communication interface to receive game play records in response to a game play request received from a player;
> a plurality of player-controlled selection devices, each player-controlled selection device coupled to a slave terminal and operative to transmit game play requests from the player to the master processing unit; and

> a plurality of output devices, each output device coupled to a slave terminal and operative to communicate to the player the receipt of a winning or losing play and the amount won.

'035 patent, col.29 l.67-col.30 l.26. While claim 1, like the other independent claims, does not specify a particular type of game, claim 14, which depends from claim 1, invokes a pull-tab lottery game. '035 patent, col.31 ll.15-17.

The initial assignee of the '035 patent was Infinational Technologies, Inc., which became Oasis Technologies, Inc. ("Oasis"). Oasis assigned the '035 patent to Gamco in December 2001. In February 2003, Gamco executed an Asset Purchase Agreement with International Game Technology ("IGT"), by which Gamco assigned the '035 patent to IGT, but reserved for itself rights to sublicense the '035 patent in the "New York State Lottery Market" and to sue for infringement in that market. Thus, IGT holds all rights to the '035 patent subject only to Gamco's reserved rights in the New York lottery market.

In May 2004, Gamco (without IGT) sued Multimedia, the New York State Lottery's ("NYSL") sole contractor for lottery games, for infringement of the '035 patent. Concluding that Gamco had sold its proprietary interest in the '035 patent to IGT, and at best retained only a right to negotiate sublicenses on IGT's behalf, the district court dismissed Gamco's claim without prejudice for lack of standing. Int'l Gamco, Inc. v. Multimedia Games, Inc., Civ. No. 04CV1053-B (N.D. Cal. June 14, 2006).

Not to be dissuaded, in November 2005, Gamco and IGT entered a new agreement regarding the rights under the patent. Gamco received rights characterized as an "exclusive license." The new agreement described the license in these terms:

> License. Gamco shall be granted and IGT grants to Gamco the exclusive right and license, within the Territory, to make, use, sell, and offer to sell, with the right to sublicense others to make, use, sell, and offer to sell game system networks covered by the '035 Patent, with the proviso that

> IGT shall have the right to approve any sublicense offered by Gamco, which approval shall not be unreasonably withheld . . . .

Pet. Br. at 5. This November 2005 modification defined the license "Territory" as "the lawful operation of lottery games authorized by the New York State Lottery in the state of New York." Id. The modification further gave Gamco exclusive rights to sue "for the past, present, and future infringement of the '035 Patent, within the Territory." Id. A few days after executing the modification to its exclusive license, Gamco filed an amended complaint against Multimedia, again alleging infringement of the '035 patent.

Multimedia again moved to dismiss for lack of subject matter jurisdiction based on a lack of standing. The district court did not dismiss the case. Initially, the district court characterized Gamco as an exclusive territorial licensee. Upon reconsideration, the trial court concluded that Gamco held an "exclusive enterprise" license – a hybrid between a territorial license and a field of use license: "Rather than being restricted only to a geographic area or only to specific kinds of conduct Gamco's rights are restricted to the operations of the New York State Lottery, an enterprise of the State of New York." Int'l Gamco, Inc. v. Multimedia Games, Inc., Civ. No. 04CV1053-B, slip op. at 4 (N.D. Cal. Sept. 1, 2006). With that characterization, the district court concluded that an exclusive enterprise licensee has standing to file suit in its own name. The trial court recognized that this case presented an issue of first impression. Accordingly, the district court certified "the question of whether an exclusive patent license, with exclusive right of enforcement, restricted to the activities of a specific enterprise within a specific geographical territory, is sufficient to confer standing on the exclusive licensee to bring a patent infringement action in its own name only" under 28 U.S.C. § 1292(b). Id., slip op. at 8.

II

Prudential standing to sue for patent infringement derives from 35 U.S.C. § 281: "A patentee shall have remedy by civil action for infringement of his patent." In turn, "patentee" includes the patentee's successors in title. 35 U.S.C. § 100(d) (2000). Transfers of title, otherwise known as assignments, are controlled by 35 U.S.C. § 261:

> Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing. The applicant, patentee, or his assigns or legal representatives may in like manner grant and convey an exclusive right under his application for patent, or patents, to the whole or any specified part of the United States.

An exclusive licensee has standing to sue in its own name, without joining the patent holder, where "all substantial rights" in the patent are transferred. Prima Tek II, L.L.C. v. A-Roo Co., 222 F.3d 1372, 1377 (Fed. Cir. 2000) (citing Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA, 944 F.2d 870, 875 (Fed. Cir. 1991); Ortho Pharm. Corp. v. Genetics Inst., Inc., 52 F.3d 1026, 1030 (Fed. Cir. 1995)). In such a case, the "exclusive licensee" is effectively an assignee. Id. (citing 35 U.S.C. § 261; Waterman v. Mackenzie, 138 U.S. 252, 255 (1891); Enzo APA & Son, Inc. v. Geapag A.G., 134 F.3d 1090, 1093 (Fed. Cir. 1998); Vaupel, 944 F.2d at 875)).

In certifying the question now before this court, the district court presupposed the standing of both exclusive territorial licensees and exclusive field of use licensees to sue in their own names without joining the patent owner. Section 261 specifically allows for geographically-restricted assignments ("to the whole or any specified part of the United States"). The Supreme Court has confirmed that exclusive territorial licensees need not join the licensor to maintain a suit for patent infringement. Waterman, 138 U.S. at 255. In contrast, until now, neither this court nor the Supreme Court has

unequivocally determined the rights of an exclusive field of use licensee with respect to standing. Because Gamco's license specifies a field of use (the operations of the NYSL), this court must address the legal implications of those limitations on its exclusive enterprise license.

This court addressed the implications of exclusive field of use licenses in <u>Textile Products, Inc. v. Mead Corp.</u>, 134 F.3d 1481, 1484 (Fed. Cir. 1998):

> Because patent rights are rights to "exclude others," <u>see</u> 35 U.S.C. § 154(a)(1), a licensee is an exclusive licensee only if the patentee has promised, expressly or impliedly, that "others shall be excluded from practicing the invention" within the field covered by the license. <u>Rite-Hite</u>, 56 F.3d at 1552. Put another way, an exclusive license is "a license to practice the invention . . . accompanied by the patent owner's promise that others shall be excluded from practicing it within the field of use wherein the licensee is given leave." <u>Western Elec. Co. v. Pacent Reproducer Corp.</u>, 42 F.2d 116, 118 (2d Cir. 1930).

This passage suggests that an exclusive field of use license may grant standing to sue. Notably, however, this statement in <u>Textile</u> is dicta. The <u>Textile</u> case did not feature any field of use licenses. In fact, the <u>Textile</u> plaintiff did not even purport to be an assignee. In <u>Textile</u>, this court concluded that the plaintiff was a non-exclusive licensee without standing to pursue a claim for patent infringement against the licensor/purchaser and a third-party provider. <u>Id.</u> at 1485.

The cases cited by <u>Textile</u> also do not provide case law support for the notion that a field of use license confers standing. In <u>Rite-Hite Corp. v. Kelley Co.</u>, 56 F.3d 1538, 1552 (Fed. Cir. 1995) (en banc), this court addressed the standing of licensed independent sales organizations (ISOs) as co-plaintiffs. Because the ISOs were not exclusive licensees, this court denied them standing as co-plaintiffs. <u>Id.</u> at 1553-54. Notably the ISOs possessed licenses limited by field of use as well as geography.

Although this court did not specify its reasoning, the field of use limitations in those licenses undoubtedly contributed to the standing deficiencies even for the ISOs who sought only to join as co-plaintiffs. In Western Electric Co., two licensees sought to join the patentee as co-plaintiffs. 42 F.2d at 119. The United States Court of Appeals for the Second Circuit permitted the licensees to join. Id. The Second Circuit did not address the licensees' standing to sue alone, without the patentee.

While this court has not considered the ability of an exclusive field of use licensee to sue in its own name, the Supreme Court offered guidance in Pope Manufacturing Co. v. Jeffery Manufacturing Co., 144 U.S. 248 (1892). The Supreme Court held that a plaintiff with exclusive rights limited to a particular embodiment of the claimed invention did not have standing to sue in his own name. Id. at 252. In Pope, the licensee received all substantial rights in the patent "so far as said patent relates to or covers the adjustable hammock seat or saddle." Id. at 249. Claim 2 of the patent covered the hammock seat while three other claims set forth combinations of which the hammock seat was only one element. Id. at 250. Thus, the plaintiff essentially received exclusive rights to only one claim of the patent.

With this setting, the Court's reasoning focused on the potential for multiple litigations against any one defendant and among the licensees themselves:

> It was obviously not the intention of the legislature to permit several monopolies to be made out of one, and divided among different persons within the same limits. Such a division would . . . subject a party who, under a mistake as to his rights, used the invention without authority, to be harassed by a multiplicity of suits instead of one, and to successive recoveries of damages by different persons holding different portions of the patent-right in the same place . . . . [I]t might lead to very great confusion to permit a patentee to split up his title within the same territory into as many different parts as there are claims.

Id. at 250-52 (quotations omitted).  Thus, the Court observed that even exclusive licenses to specific embodiments or claims of a patent engendered the threat of multiple suits for any given act of infringement.

The claim-by-claim exclusive license in Pope is indistinguishable from an exclusive field of use license insofar as both types of licenses divide the scope of a patent right by its subject matter.  Courts and commentators have relied on Pope for the proposition that an exclusive field of use licensee does not have standing to sue in its own name without joining the patent holder.  Etherington v. Hardee, 290 F.2d 28 (5th Cir. 1961); De Forest v. Collins Wireless Tel. Co., 174 F. 821 (C.C.D.N.J. 1909); Roger D. Blair & Thomas F. Cotter, The Elusive Logic of Standing Doctrine in Intellectual Property Law, 74 Tul. L. Rev. 1323, 1407 (2000); Joseph Yang, Advanced Patent Licensing: What You Need to Know Before Licensing Your Patent 2007, 900 P.L.I./Pat 73, 86 (2007); but see Pratt & Whitney Co. v. United States, 153 F. Supp. 409, 410 (Ct. Cl. 1957) (permitting a field of use licensee to bring suit without analyzing constitutional or prudential standing and without citing Pope, noting only "[w]e can think of no reason why an exclusive licensee, under a use limitation, should not be able to do so").

In Etherington, the plaintiff-licensee held "the exclusive, irrevocable, royalty-free license with the irrevocable, royalty-free exclusive right to grant sub-licenses to manufacture, use and sell throughout the world mud guns and line jets" and "the sole and exclusive right in their respective fields of operation to sue for enforcement and infringement of the patent."  290 F.2d at 28-29.  The United States Court of Appeals for the Fifth Circuit denied the plaintiff standing because "the grant of a right of a limited use

is a mere license and the licensee cannot maintain a suit to enjoin infringement." Id. at 29-30 (citing Pope).

Similarly, in De Forest, the appellate court held that a licensee who held the exclusive rights to make, use, sell and sue for infringement of the patented invention with respect to "telephone work and wireless telephonic communication only" did not possess sufficient rights to sue in his own name. 174 F. 821, 822-23. The court reasoned that requiring the licensee to join the patentee before bringing suit is "not merely to prevent persons who have a right to only a part of the monopoly from putting the whole in jeopardy by litigation, but also to protect innocent purchasers of the use of the improvement from fraudulent impositions and against being harassed by a multiplicity of suits." Id. at 824.

As noted by the Supreme Court, allowing a licensee, even one with exclusive rights to the patent for a particular field of use, to sue in its own name alone poses a substantial risk of multiple suits and multiple liabilities against an alleged infringer for a single act of infringement. Gayler, 51 U.S. at 494; Pope, 144 U.S. at 251-52; Crown Die & Tool Co. v. Nye Tool & Mach. Works, 261 U.S. 24, 38 (1923). To alleviate this risk, this court's prudential standing requirement compels an exclusive licensee with less than all substantial rights, such as a field of use licensee, to join the patentee before initiating suit. See Propat Int'l Corp. v. RPost, Inc., 473 F.3d 1187, 1192-93 (Fed. Cir. 2007); Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc., 248 F.3d 1333, 1347 (Fed. Cir. 2001). In contrast, an exclusive territorial license does not involve the same multiplicity risks because a single act of infringement is likely to give rise to only one viable suit for infringement by the exclusive territorial licensee in the jurisdiction

where the infringement occurred. In holding that an exclusive field of use licensee does not have standing to sue in its own name without joining the patent owner, this court also honors the mainstay of Supreme Court patent standing jurisprudence in Waterman. To emphasize the importance of focusing on the rights actually transferred rather than on the often impressionistic distinction between assignments and licenses, the Court offered the following example:

> For instance, a grant of an exclusive right to make, use and vend two patented machines within a certain district, is an assignment, and gives the grantee the right to sue in his own name for an infringement within the district, because the right, although limited to making, using and vending two machines, excludes all other persons, even the patentee, from making, using or vending like machines within the district.

Waterman, 138 U.S. at 256. The Supreme Court emphasized that an assignment that confers standing also excludes "all other persons, even the patentee." Id. Even if the grant of rights covers only two devices, the Court clarified, it operates to confer standing if it excludes everyone else, including the patentee, from practicing the patent within the territory covered by the license. Id.

### III

In this case, Gamco's exclusive enterprise license conveys both a territorial license and a field of use license. Because the "Territory" of the license includes both geographic (the NYSL-authorized sites) and field of use ("lottery games") restrictions, Gamco's "exclusive" rights must meet both conditions. The problem of a multiplicity of lawsuits arising from an exclusive field of use license is not cured by adding a geographic restriction. As discussed above, a field of use license, like the license in Pope, apportions the subject matter of a patent. Thus, an exclusive field of use license

2007-1034                                  10

subjects an infringer to suit by multiple parties because the license has split the patented subject matter amongst various parties.

In this case, Gamco's exclusive enterprise license limits its rights to lottery games, but the '035 patent extends beyond that limitation. For example, a single infringing game system at an NYSL-authorized site could offer blackjack, keno, mahjong, and lottery games.[1] Thus, the single infringing act of offering NYSL games might subject the infringer to suit by Gamco for the lottery games, and separately by IGT or some other game-specific licensee for the other games. This example also shows the potential of suits among licensees or between the licensee and licensor. For example, the hypothetical infringer's keno game could conceivably lead to a squabble over whether keno was a "lottery game" under Gamco's license. Divvying up the rights in the '035 patent along subject matter rather than geographic lines would "permit several monopolies to be made out of one" in a manner not specifically sanctioned by the Patent Act.

These multiplicity problems in the event that an exclusive enterprise licensee could sue without joining its licensor were foreseen by the Supreme Court in <u>Pope</u>. In <u>Pope</u>, as in this case, the license only conveyed rights to a subset of the patented subject matter. For that reason, as in this case, the conveyance posed a threat of multiple suits based on the same allegations of infringement. This court therefore holds

---

[1] Whether non-lottery games would be allowed by NYSL or another appropriate regulatory body is a separate question, one that is not relevant to the prudential standing inquiry for patent infringement. Relying on extraneous regulations to determine whether a field of use licensee is effectively an assignee of a patent within a given geographic territory would only mask the multiplicity issues presented by such licenses, not resolve them. The scope of the license, and thus the licensee's standing, would be subject to change and would be unascertainable simply from the license and the patent.

that Gamco lacks standing to sue in its own name without joining IGT.  As an exclusive enterprise licensee, Gamco does not hold all substantial rights in the full scope of the '035 patent.  Therefore, this court reverses the district court's denial of defendant Multimedia's motion to dismiss Gamco's complaint.

## COSTS

Each party shall bear its own costs.

## REVERSED

# United States Court of Appeals for the Federal Circuit

2007-1034

INTERNATIONAL GAMCO, INC.,

Plaintiff/Counterclaim Defendant-
Appellee,

and

JOHN ADAMS and SCOTT HENNEMAN,

Counterclaim Defendants-
Appellees,

and

OASIS TECHNOLOGIES, INC.,

Counterclaim Defendant,

v.

MULTIMEDIA GAMES, INC.,

Defendant/Counterclaimant-
Appellant.

FRIEDMAN, <u>Senior Circuit Judge</u>, dubitante:

In holding, as it apparently does, that an exclusive field-of-use licensee cannot sue solely in its own name for infringement, the court relies upon the Supreme Court's 1892 <u>Pope</u> decision. <u>Pope Mfg. Co. v. Gormully & Jeffery Mfg. Co.</u>, 144 U.S. 248 (1892). There the Court held that an exclusive licensee of one of four claims in a patent could not itself sue for an alleged infringement of that claim. The ground of that holding, however, as I read the Court's opinion, was not that exclusive field-of-use licensees as

such cannot sue, although the assigned claim involved such an assignment, i.e., "the adjustable [bicycle] hammock seat or saddle." Rather, the Court's rationale was that "a patentee can[not] split up his patent into as many different parts as there are claims, and vest the legal title to those claims in as many different persons." Pope, 144 U.S. at 250.

No one questions, as the Supreme Court recognized in Pope, that a territorially-limited exclusive license authorizes the licensee to sue for infringement. The statute governing patent assignments, 35 U.S.C. § 261, however, contains parallel sentences that seem to treat geographical and field-of-use assignments the same. It states that "patents, or any interest therein, shall be assignable" by a written instrument and that the patentee or his assignee "may in like manner grant an exclusive right under his . . . patents to the whole or any specified part of the United States." Id. Under this language, it seems unlikely that Congress intended only the latter (geographical), but not the former ("any interest" in a patent) assignees to be able to sue in their own names.

This court may be correct that field-of-use exclusive licensees pose a significantly greater likelihood of multiple lawsuits than geographically limited assignments do. It seems to me unlikely, however, that there would be a serious danger of such multiplicity, in the circumstances of this case. It also might seem anomalous for this court to rely on Supreme Court dicta in Pope while simultaneously distinguishing the seemingly inconsistent view of this court in its 1988 Textile Products case as dicta. Textile Prods v. Mead Corp., 134 F.3d 1481, 1484 (Fed. Cir. 1998). In

sum, I am unconvinced that the district court erred in permitting Gamco to maintain its patent infringement suit without joining its licensor.