Opinion for the court filed by Circuit Judge GAJARSA. Dissenting opinion filed by Circuit Judge NEWMAN.
GAJARSA, Circuit Judge.
Appellant Navinta LLC appeals from a final judgment of the United States District Court for the District of New Jersey finding, inter alia, that Navinta’s Abbreviated New Drug Application (“ANDA”) product would directly infringe claims 1-3 of U.S. Patent No. 4,870,086 (the “'086 patent”) and contribute to and induce infringement of claim 6 of the '086 patent. In addition, the district court found that Navinta’s ANDA product would contribute to and induce infringement of claims 1 and 9 of U.S. Patent No. 5,670,524 (the “'524 patent”) and claim 1 of U.S. Patent No. 5,834,489 (the “'489 patent”), both disclosing methods of using low concentrations of ropivacaine hydrochloride to treat pain. See Abraxis Bioscience, Inc. v. Navinta, LLC, 640 F.Supp.2d 553, 569-92 (D.N.J.2009). Because the district court erred in failing to dismiss Abraxis Bioscience, Inc.’s (“Abraxis’s”) action for lack of standing, we vacate the judgment below.
Background
Abraxis markets the drug Naropin® as a local or regional anesthetic indicated for use in surgery and for acute pain management, such as pain management during labor and delivery. Abraxis sells Naropin® in four concentrations: 1.0%, 0.75%, 0.5%, and 0.2%. The 0.2% concentration is the only FDA-approved strength for use in labor and delivery. The '086 patent discloses the sole active ingredient in Abraxis’s Naropin® drug product, ropivacaine hydrochloride monohydrate (“ropivacaine”).[1] The '489 patent claims the use of ropivacaine for treating pain at concentrations less than 0.5% administered epidurally. The '524 patent discloses the use of ropivacaine for treating pain at concentrations less than 0.25%. Asserted claim 9 of the '524 patent is a composition claim that covers “a pharmaceutical salt of ropivacaine at a concentration [¶]... ] lower than 0.25% by weight.”
The sole inventor of the '086 patent, Rune Sandberg, assigned his rights in the '086 patent to Astra Lakemedel Aktieboag (“Astra L”) on October 16, 1986. Arne *1361 Torsten Eek, as sole inventor, assigned his rights in the '524 and '489 patents to AB Astra on June 19, 1994. As a result of a merger between AB Astra and AstraZeneca AB (“AZAB”), AB Astra assigned the '524 and '489 patents to AZAB.
On April 26, 2006, Abraxis entered into an Asset Purchase Agreement (“APA”) with AstraZeneca (“AZ-UK”). The APA provides that AZ-UK “shall or shall cause one or more of its Affiliates to, Transfer to the Purchaser, and the Purchaser shall purchase and accept from the Seller or its Affiliates, as applicable, all of the right, title and interests of the Seller and its Affiliates in” the asserted patents. Following the execution of the APA, AZ-UK and Abraxis executed a written Intellectual Property Assignment Agreement (“IP Assignment Agreement”) on June 28, 2006 purportedly assigning the asserted patents to Abraxis. The “Further Assurances” provision of the IP Assignment Agreement states, in pertinent part, that “Seller will ... execute ... any and all further ... assignments ... as necessary to ... vest in Buyer any of the Transferred Intellectual Property.” There was a break in the chain of title, however, because the asserted patents were still owned by Astra L and AZ-AB, neither of which had assigned the rights in the asserted patents to AZ-UK. See Abraxis BioScience, Inc. v. Navinta LLC, No. 07-1251, 2009 WL 904043, at *2 (D.N.J. Mar. 30, 2009) (order denying motion to dismiss for lack of subject matter jurisdiction).
On November 13, 2006, Navinta filed an ANDA for a generic version of Naropin®. Along with the ANDA, Navinta filed a patent certification pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) (“Paragraph IV Certification”), which alleged that none of the claims of the '086 patent would be infringed by the manufacture, use, or sale of Navinta’s generic ropivacaine hydrochloride product. At the time of the Paragraph IV Certification, the only patent listed by Astra in the Food and Drug Administration’s (“FDA’s”) Approved Drug Products with Therapeutic Equivalence Evaluations (the “Orange Book”) for Naropin® was the '086 composition patent. Although the '524 and '489 patents issued ten years earlier, on September 23, 1997, and November 10, 1998, respectively, Astra elected not to list those patents in the Orange Book.
On March 15, 2007, Abraxis filed an action against Navinta under the HatchWaxman Act, triggering the thirty-month statutory stay on approval of Navinta’s ANDA. See Drug Price Competition and Patent Term Restoration Act of 1984, Pub.L. No. 98-417, 98 Stat. 1585 (1984) (codified at 21 U.S.C. §§ 355, 360cc; 35 U.S.C. §§ 156, 271). The complaint alleged that Navinta’s ANDA with its Paragraph IV Certification artificially infringes the listed '086 patent under 35 U.S.C. § 271(e)(2). See Eli Lilly & Co. v. Medtronic, Inc., 496 U.S. 661, 678, 110 S.Ct. 2683, 110 L.Ed.2d 605 (1990) (Section 271(e)(2) creates “a highly artificial act of infringement that consists of submitting an ANDA ... containing a [Paragraph IV Certification] that is in error as to whether commercial, manufacture, use, or sale of the new drug (none of which, of course, has actually occurred) violates the relevant patent.”); Glaxo Group Ltd. v. Apotex, Inc., 376 F.3d 1339, 1351 (Fed.Cir.2004) (“[Section] 271(e)(2) is designed to create an artificial act of infringement for purposes of establishing jurisdiction in the federal courts.... ”). Also, to avoid the listing requirements under § 271(e)(2) with regards to the '524 and '489 method patents, the complaint erroneously alleged indirect infringement of the method patents under 35 U.S.C. § 271(b)-(c). Abraxis could not make any such allegation, however, because Navinta has never sold or offered to sell ropivacaine hydrochloride *1362 products and an act of actual commercial infringement is required for induced or contributory infringement. See 35 U.S.C. § 271(b) — (c).
On the same day this action was filed, Astra L and AZ-AB each executed nearly identical assignments of their respective patents to AZ-UK. The assignments reference the April 26, 2006 APA and provide that the assignments were executed to allow AZ-UK to “further convey” the patents to Abraxis. On November 12, 2007, almost eight months after filing suit, AZ-UK, in a separate document entitled “Intellectual Property Assignment Agreement,” “confirm[ed] the sale, assignment, conveyance and transfer to Abraxis, for Abraxis’ sole and exclusive use and enjoyment, of all of AstraZeneca UK’s right, title, and interest, in and to” the asserted patents. The agreement further stated that AZ-UK and Abraxis “consider and have considered Abraxis by way of assignment and pursuant to the [APA], to own all rights, title, and interest” to the asserted patents, including the right to sue for patent infringement no later than June 28, 2006.
Awaiting the expiration of the '086 patent on the composition, Navinta submitted a “Section viii Statement” along with a proposed labeling amendment seeking a use for its generic ropivacaine hydrochloride product not covered by the '524 and '489 method patents. As a general rule, the label associated with the generic version of a drug must be exactly the same as the label of the branded drug approved in the original New Drug Application (“NDA”). 21 U.S.C. § 355(j)(2)(A)(v), (j)(4)(G); 21 C.F.R. § 314.94(a)(8)(iv). One exception to the rule under the Hatch-Waxman Act is if a generic manufacturer makes a “Section viii Statement,” 21 U.S.C. § 355(j)(2)(A)(viii), seeking FDA approval for a use not covered by a method patent listed in the Orange Book, along with a proposed label that “carves out” the patented method. Navinta submitted the Section viii Statement to avoid Abraxis’s infringement contentions regarding the unlisted method patents. Specifically, Navinta’s labeling amendment sought to delete the indication for acute pain management and maintained only the indication for surgical anesthesia with a recommended concentration of greater than 0.5%. It is uncontested that the use of ropivacaine for surgical anesthesia at concentrations of at least 0.5% does not infringe the '524 and '489 patents because the claims of those patents are limited to methods of treating pain and also require concentrations less than 0.25% and 0.5%, respectively.
Initially, the FDA rejected Navinta’s labeling amendment because the '524 and '489 patents were not listed in the Orange Book at the time the complaint was filed, and thus, there was no basis for the Navinta package insert to depart from the approved NDA package insert for Naropin®. Then, in late 2007, Abraxis finally listed the '524 and '489 patents in the Orange Book. In response, Navinta resubmitted its Section viii Statement and the FDA allowed the labeling amendment after Navinta made significant changes to its package insert to “carve out” all statements that might reasonably relate to the uses claimed in the '524 and '489 patents.
Subsequently, Navinta filed a motion to dismiss the infringement counts with respect to the '524 and '489 patents for lack of subject matter jurisdiction because the counts alleged speculative future infringement of the unlisted method patents under § 271(b) — (c). In response, Abraxis moved to amend the complaint to add a claim of infringement of the '524 and '489 patents under § 271(e)(2). Navinta argued that the district court also lacked jurisdiction under § 271(e)(2) because the '524 and '489 method patents were not listed in the *1363 Orange Book and, therefore, Navinta could not make a Paragraph IV Certification as to those patents. The district court granted Abraxis’s motion to amend its complaint to allege that Navinta infringed the '524 and '489 patents pursuant to § 271(e)(2). See Abraxis BioScience, Inc. v. Navinta LLC, No. 07-1251 (D.N.J. Oct. 9, 2007) (order granting motion to amend complaint). The district court denied Navinta’s Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction and exercised jurisdiction over the method patents based on § 271(e)(2) and the Declaratory Judgment Act. Id. (order denying motion to dismiss for lack of subject matter jurisdiction under 35 U.S.C. § 271(e)(2)).
Navinta also filed a second Rule 12(b)(1) motion to dismiss for lack of standing alleging that Abraxis did not own the asserted patents at the time the complaint was filed. See Abraxis BioScience, 2009 WL 904043, at *1. While acknowledging that there was a break in the chain of title to the patents, the district court held that the “intent” of the various Astra entities was sufficient to imply a nunc pro tunc assignment based on the relationship between the corporate entities. Id. at *4. The district court found that:
[although Defendant is correct that Astra L and AZ-AB were not parties to the APA, neither were they complete strangers to that transaction. They were, respectively, a corporate affiliate and subsidiary of AZ-UK, and each of the March 2007 agreements expressly recognize that they are “affiliate[s] of the Transferee.” So while Astra L and AZ-AB may not have been bound by the terms of the APA, given their relationship to the transaction between Abraxis and AZ-UK, the Court finds that then-express recognition of the APA in the March 2007 assignments is significant— it evinces their intent that their transfer of the patents to AZ-UK be in accordance with the terms of that agreement, i.e., retroactive to June 28, 2006.
Id. The district court then gave the March 15, 2007, assignments nunc pro tunc effect based on the June 28, 2006 IP Assignment Agreement between AZ-UK and Abraxis in order to cure the defect in ownership as of the date of filing of Abraxis’s complaint. Id.
After a seven-day bench trial, the court issued its decision on August 3, 2009, two days before the expiration of the thirty-month stay on Navinta’s ANDA. Abraxis, 640 F.Supp.2d at 558. The district court found direct and indirect infringement of the '086 patent and indirect infringement of the '524 and '489 patents. Id. at 569-92. Pursuant to its findings on inducement and contributory infringement, the district court ordered that the effective date of approval of Navinta’s ANDA product be no earlier than September 14, 2014, the expiration date of the '524 and '489 patents.
Navinta timely appealed to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(1).
Discussion
Standing is a constitutional requirement pursuant to Article III and it is a threshold jurisdictional issue. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). We review standing, a question of law, de novo. See Pennington Seed, Inc. v. Produce Exch. No. 299, 457 F.3d 1334, 1338 (Fed.Cir.2006); Enzo Apa & Son, Inc. v. Geapag A.G., 134 F.3d 1090, 1092 (Fed.Cir.1998). “To the extent [any] jurisdictional facts are in dispute, however, the findings of fact are reviewed for clear error.” Canadian Lumber Trade Alliance v. United States, 517 F.3d 1319, 1330-31 (Fed.Cir.2008); see SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1377 (Fed.Cir. *1364 2007); Plumtree Software, Inc. v. Datamize, LLC, 473 F.3d 1152, 1158 (Fed.Cir.2006).
We have stated that “[although state law governs the interpretation of contracts generally ... the question of whether a patent assignment clause creates an automatic assignment or merely an obligation to assign is intimately bound up with the question of standing in patent cases. We have accordingly treated it as a matter of federal law.” DDB Techs., L.L.C. v. MLB Advanced Media, L.P., 517 F.3d 1284, 1290 (Fed.Cir.2008); see Speedplay, Inc. v. Bebop, Inc., 211 F.3d 1245, 1253 (Fed.Cir.2000) (stating that while the ownership of patent rights is typically a question exclusively for state courts, the question of whether contractual language effects a present assignment of patent rights, or an agreement to assign rights in the future, is resolved by Federal Circuit law).
A court may exercise jurisdiction only if a plaintiff has standing to sue on the date it files suit. Keene Corp. v. United States, 508 U.S. 200, 207, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993) (There is a “longstanding principle that the ‘jurisdiction of the Court depends upon the state of things at the time of the action brought.’ ”) (internal citations omitted); Minneapolis & St. Louis R.R. v. Peoria & Perkin Union Ry. Co., 270 U.S. 580, 586, 46 S.Ct. 402, 70 L.Ed. 743 (1926) (“The jurisdiction of the lower court depends upon the state of things existing at the time the suit was brought.”). Based upon this Supreme Court jurisprudence, we have held that in a patent infringement action, “the plaintiff must demonstrate that it held enforceable title to the patent at the inception of the lawsuit” to assert standing. Paradise Creations, Inc. v. UV Sales, Inc., 315 F.3d 1304, 1309-310 (Fed.Cir.2003); see also 35 U.S.C. §§ 100(d), 281 (A “patentee” is entitled to bring a “civil action for infringement of his patent,” and the patentee includes the “successors in title to the patentee.”). Thus, “if the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured” after the inception of the lawsuit. Schreiber Foods, Inc. v. Beatrice Cheese, Inc., 402 F.3d 1198, 1203 (Fed.Cir.2005); Bans v. Digital Equip. Corp., 252 F.3d 1320, 1328 (Fed.Cir.2001) (affirming dismissal of complaint and denial of motion to amend pleadings to substitute assignee as plaintiff when plaintiff-inventor assigned the patent prior to filing the action).
Whether an assignment of patent rights in an agreement is automatic or merely a promise to assign depends on the contractual language itself. DDB Techs., 517 F.3d at 1290. If the contract expressly conveys rights in future inventions, no further act is required once an invention comes into being, and the transfer of title occurs by operation of law. Id. For example, in Speedplay, an employment agreement providing that all inventions made during the term of employment “shall belong” to Speedplay and that the employee “hereby conveys, transfers and assigns ... all right, title and interest in and to Inventions” operated as an automatic assignment once the invention was created. 211 F.3d at 1253 (holding that a party had standing to assert its patent because the assignment agreement in effect granted it all substantial rights in the patent); see DDB Techs., 517 F.3d at 1290 (holding that an employment agreement reciting that the employee “agrees to and does hereby grant and assign” all rights in future inventions was an automatic assignment to employer by operation of law with no further act required on the part of the employer).
In contrast, contracts that obligate the owner to grant rights in the future do *1365 not vest legal title to the patents in the assignee. Bd. of Trs. of Lelcmd Stanford Junior Univ. v. Roche Molecular Sys., Inc., 583 F.3d 832, 841-42 (Fed.Cir.2009) (cert. granted Nov. 1, 2010) (finding that “agree to assign” contract language in a university researcher’s patent assignment agreement with the university only provided a promise to assign the invention in the future, and, therefore, was trumped by “will assign and do hereby assign” contract language in a later agreement the researcher signed with a company regarding any invention made while collaborating with the company). Thus, contract language stating that a party “agrees to assign” reflects a mere promise to assign rights in the future, not an immediate transfer of expectant interests. See IpVenture, Inc. v. ProStar Computer, Inc., 503 F.3d 1324, 1327 (Fed.Cir.2007) (interpreting “agree to assign” as “an agreement to assign,” requiring a subsequent written instrument); Arachnid, Inc. v. Merit Indus., Inc., 939 F.2d 1574, 1580-81 (Fed.Cir.1991) (holding that “will be assigned” does not create “a present assignment of an expectant interest”).
Here, the contractual language of the APA indicates that the actual transfer of the asserted patents was to occur in the future. The APA states that AZ-UK “shall, or shall cause one or more of its Affiliates to, Transfer to the Purchaser, and the Purchaser shall purchase and accept from the Seller or its Affiliates, as applicable all of the right, title and interests of the Seller and its Affiliates in” the asserted patents. The actual transfer of the patents was to occur by means of a separate “IP Assignment Agreement” in the form to be mutually agreed upon by the parties prior to a July 31, 2006 closing date. Following the execution of the APA, AZ-UK and Abraxis executed the written June 28, 2006 IP Assignment Agreement. The IP Assignment Agreement purported to assign the asserted patents from AZ-UK to Abraxis. At that time AZ-UK could not assign the patents because it did not possess their titles. AZ-UK had no legal title to assign and, therefore, lacked standing to commence this litigation. See Gaia Techs., Inc. v. Reconversion Techs., Inc., 93 F.3d 774, 778 (Fed.Cir.1996) (dismissing plaintiffs patent and trademark infringement claims for lack of standing because of its “inability to prove that it was the owner of the Intellectual Property at the time the suit was filed”), as amended on reh’g on different grounds, 104 F.3d 1296 (Fed.Cir.1996); see FilmTec Corp. v. Allied-Signal, Inc., 939 F.2d 1568, 1572 (Fed.Cir.1991) (stating that the purported assignment is a nullity if the assignor had nothing to assign). The district court’s ruling to the contrary was legal error.
The dissent contends that our “promise to assign” line of cases is irrelevant. Dissent Op. at 1372-73. The dissent’s contention is erroneous. Because the APA is a promise by AZ-UK to assign the relevant patents to Abraxis when AZ-UK obtains legal title, under our “promise to assign” cases, a subsequent written agreement is necessary to consummate the assignment. See IpVenture, 503 F.3d at 1327. It is clear from the record that AZ-UK did not have legal title when it executed the June 28, 2006 IP Assignment Agreement and it did not obtain legal title to the patents until March 15, 2007. Whether, as the dissent argues, the March 15, 2007 assignments from Astra L and AZ-AB to AZ-UK contained nunc pro tunc provisions is irrelevant. Even if given retroactive effect, the March 15, 2007 assignments do not automatically assign the patents to Abraxis; a subsequent written agreement was necessary. The only subsequent written agreement between AZ-UK and Abraxis is the November 12, 2007 Intellectual Property Assignment Agreement. This document is a clear recognition by Abraxis that AZ-UK did not hold legal *1366 title and therefore could not have transferred the patents without a properly executed assignment. It was a futile attempt by the parties to correct a critical error by a nunc pro tunc assignment. The effect of this document — executed eight months after the lawsuit was filed — is the critical issue on appeal.
Even if, as the district court found, the March 15, 2007 agreements were considered to be retroactive, title to the asserted patents did not automatically vest in Abraxis upon the March 15, 2007 transfer to AZ-UK because the June 28, 2006 IP Assignment Agreement did not result in an immediate transfer of “expectant interests” to Abraxis. See Bd. of Trs. of Leland Stanford Junior Univ., 583 F.3d at 841-42. For title to vest in Abraxis, a further assignment by AZ-UK was required by the “Further Assurances” provision of the June 28, 2006 IP Assignment Agreement. Whether Astra L, AZ-AB, and AZ-UK are part of the same corporate structure and are not “complete strangers,” therefore, is irrelevant because there was no valid written assignment to Abraxis. See 35 U.S.C. § 261 (assignments of patents must be in writing); Enzo APA, 134 F.3d at 1093 (same). Common corporate structure does not overcome the requirement that even between a parent and a subsidiary, an appropriate written assignment is necessary to transfer legal title from one to the other. Without the transfer of legal title of the patents, Abraxis had no standing to bring this infringement action. Lans, 252 F.3d at 1328 (holding that a plaintiff-inventor, who assigned his patent to a corporation in which he was the sole shareholder and managing director prior to filing the action, lacked standing to sue).
AZ-UK finally assigned the asserted patents to Abraxis on November 12, 2007, nearly eight months after filing the complaint.[2] Abraxis contends that the November 12, 2007 assignment confers standing because it was a nunc pro tunc assignment, thus, the requirement to have legal title to the patents on the day of suit was met retroactively. But the argument is to no avail because “if the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured by ... the subsequent purchase of an interest in the patent in suit.” Schreiber Foods, 402 F.3d at 1203. Even if the November 12, 2007 agreement is considered to be a nunc pro tunc assignment, for purposes of standing, Abraxis was required to have legal title to the patents on the day it filed the complaint and that requirement can not be met retroactively.[3] Enzo APA, 134 F.3d at 1093 (vacating judgment of infringement and holding that “nunc pro tunc assignments are not sufficient to confer retroactive standing” where no written transfer of *1367 rights under patent had been made at the time claims were brought); Gaia Techs., 93 F.3d at 780 (reversing denial of motion to dismiss infringement complaint and vacating verdict that the asserted patents were infringed because alleged nunc pro tunc agreement was insufficient to cure the lack of standing existing when the complaint was filed). Thus, despite Abraxis’s delayed attempt to obtain title to the asserted patents, the action must be dismissed because Abraxis lacked standing on the day it filed the action.[4]
The foregoing rule has a narrow exception. A party may sue for past infringement transpiring before it acquired legal title if a written assignment expressly grants the party a right to do so. Moore v. Marsh, 74 U.S. 515, 522, 7 Wall. 515, 19 L.Ed. 37 (1868) (“[I]t is a great mistake to suppose that the assignment of a patent carries with it a transfer of the right to damages for an infringement committed before such assignment.”); Arachnid, 939 F.2d at 1579 n. 7, 1580-81 (holding that the right to sue for past infringement “must be express, and cannot be inferred from an assignment of the patent itself’). This exception is irrelevant to this case. Despite what the parties to the November 12, 2007 assignment believed, Abraxis was never granted the right to sue for past infringement that occurred when Navinta filed its ANDA and Paragraph IV Certification on November 13, 2006. The March 15, 2007 assignments to AZ-UK did not assign the right to sue for past infringement, thus AZ-UK could not have assigned those rights to Abraxis on November 12, 2007, even if the November 12, 2007 assignment is “considered” to be retroactive. Therefore, Abraxis’s complaint must be dismissed because Abraxis lacked standing at the time the action was filed and continues to lack standing to sue for past infringement.
Finally, Abraxis improperly relies on Arachnid to support its argument that equitable title to the asserted patents through the APA was sufficient to confer standing to sue under the Hatch-Waxman Act. Arachnid concerned a present agreement to assign rights to future inventions. 939 F.2d at 1576, 1580. In contrast, the June 2006 IP Assignment Agreement attempted to assign rights to existing patents, but was ineffective, because the assignor, AZ-UK, did not own the patents at the time. Without ownership, AZ-UK had no authority to convey either the patents’ equitable or legal titles to Abraxis. Cf. Arachnid, 939 F.2d at 1581. The legal title to the asserted patents remained with Astra L and AZ-AB until March 15, 2007 when it was transferred to AZ-UK, leaving Abraxis with defective legal title to the patents.
*1368 Accordingly, we reverse the denial of the motion to dismiss the infringement complaint for lack of standing, vacate the district court’s judgment, and remand with instructions for the district court to dismiss Abraxis’s complaint without prejudice. Because we vacate the judgment of the district court for lack of standing, we need not address Navinta’s alternative jurisdictional ground for dismissal and we cannot review the merits of Navinta’s arguments regarding infringement.
REVERSED, VACATED, AND REMANDED

. Because the '086 patent expired on September 24, 2010, Navinta chose not to appeal the district court's infringement findings regarding that patent.

. On December 5, 2008, Abraxis assigned all rights, title, and interest in the asserted patents to APP Pharmaceuticals LLC and joined APP Pharmaceuticals as a plaintiff in this action. See Abraxis BioScience, 2009 WL 904043, at *5. Because Abraxis did not have standing at the time it filed the complaint, the joinder of APP Pharmaceuticals in 2008 cannot cure the jurisdictional defect after the inception of the action.

. While Abraxis filed an amended complaint on November 16, 2007, we look to the date of the original Complaint, March 15, 2007, because "the jurisdiction of the Court depends on the state of things at the time of the action brought." Keene Corp. v. United Stales, 508 U.S. 200, 207, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993); see Schreiber Foods, 402 F.3d at 1203, n. 7 ("The initial standing of the original plaintiff is assessed at the time of the original complaint, even if the complaint is later amended.”); Fed.R.Civ.P. 15(a) & (c) (requiring an amended pleading to relate back to the date of the original pleading when the amendment asserts a claim that arises out of the conduct, transaction, or occurrence set out in the original pleading).

. The dissent criticizes our reliance on Enzo. Dissent Op. at 1372. Yet, we are bound by Enzo and subsequent cases applying Enzo’s clear holding. As we have stated before, "[tjhis court’s precedent clearly establishes that a nunc pro tunc assignment executed after filing of a lawsuit cannot retroactively cure standing that was deficient at the time of filing.” Messagephone, Inc. v. SVI Sys.'s, Inc., 243 F.3d 556, - (Fed.Cir.2000) (Table).
The dissent attempts to distinguish Enzo on the grounds that there was no evidence of any intention that the license would be exclusive before the suit was filed. Dissent Op. at 1372. The distinction is impuissant. First, the parties in Enzo argued that the nunc pro tunc assignment agreement "was a memorialization [sic] of the pre-suit oral agreement of the parties,” thereby establishing evidence of an intention that the license would be exclusive before the suit was filed. 134 F.3d at 1092. Second, despite the dissent's focus on intent, neither Enzo nor any subsequent case involving nunc pro tunc assignments focused on intent. Instead, Enzo and its progeny stand for the clear proposition that irrespective of a party’s intent, "nunc pro tunc assignments are not sufficient to confer retroactive standing.” Id. at 1093 (formatting added).