# United States Court of Appeals for the Federal Circuit

---

**ALPS SOUTH, LLC,**
*Plaintiff-Cross-Appellant*

**v.**

**THE OHIO WILLOW WOOD COMPANY,**
*Defendant-Appellant*

---

2013-1452, -1488, 2014-1147, -1426

---

Appeals from the United States District Court for the Middle District of Florida in No. 08-CV-1893, Judge Mary S. Scriven.

---

Decided: June 5, 2015

---

RONALD A. CHRISTALDI, Shumaker, Loop & Kendrick, LLP, Tampa, FL, argued for plaintiff-cross-appellant. Also represented by MINDI M. RICHTER; DAVID WAYNE WICKLUND, Toledo, OH.

JOHN DAVID LUKEN, Dinsmore & Shohl LLP, Cincinnati, OH, argued for defendant-appellant. Also represented by JOSHUA LORENTZ, BRIAN S. SULLIVAN.

---

Before LOURIE, MOORE, and CHEN, *Circuit Judges.*

CHEN, *Circuit Judge.*

Alps South, LLC (Alps) sued The Ohio Willow Wood Company (OWW), asserting infringement of U.S. Patent No. 6,552,109 (the '109 patent). Among other pre- and post-trial motions, OWW filed an unsuccessful motion to dismiss contending that Alps lacked standing to sue under the Patent Act. At trial, a jury found that the '109 patent was valid and that OWW had willfully infringed. OWW now appeals the denial of its motion to dismiss for lack of standing. In addition, OWW appeals the denial of its motion for judgment as a matter of law of invalidity and no willful infringement and the decisions relating to enhanced damages, permanent injunction, attorneys' fees, and contempt. Alps cross-appeals the decision declining to further enhance the damages award as well as the decision relating to OWW's absolute intervening rights defense. Because the district court erred when it denied OWW's motion to dismiss for lack of standing, we now reverse, vacate the judgment below, and remand with instructions to dismiss this action.

## BACKGROUND

Alps and OWW both make and sell "liners" that are used as a cushioning and protective layer between the residuum of an amputated limb and a prosthetic limb. The '109 patent, entitled "Gelatinous Elastomer Compositions and Articles," is directed to composite articles of a thermoplastic gel and a substrate, such as foam or fabric. According to the '109 patent, prosthetic liners that incorporate the claimed composite articles are not only comfortable and skin-friendly, but are also more durable than previous liners. The patented articles, however, are not limited to any particular application or use.

After the '109 patent issued, the inventor assigned the patent to Applied Elastomerics, Inc. (AEI), a company created by the inventor. On August 31, 2008, Alps signed a license agreement with AEI covering a number of AEI's

patents, including the '109 patent. Shortly thereafter, on September 23, 2008, Alps, without naming the patent owner, AEI, as a co-plaintiff, filed a patent infringement suit against OWW. Because Alps declined to join AEI as a co-plaintiff, OWW filed a motion to dismiss for lack of standing. While the motion was pending, Alps and AEI executed an amended license agreement that eliminated several limitations on Alps's rights and removed certain rights retained by AEI. Although the amended agreement was executed on January 28, 2010, almost sixteen months after Alps commenced the action, the parties apparently intended this to be a *nunc pro tunc* agreement that lists the effective date as the date of the original agreement, August 31, 2008.

The district court rejected OWW's standing argument and denied the motion to dismiss. The court concluded that the terms of the original agreement, giving Alps the right to exclude, transfer, and sue, sufficed to provide Alps with standing. The district court further explained that none of the rights retained or reserved by AEI were "substantial enough under the language of the agreement or case law construing similar agreements to require that [AEI] be joined as a co-plaintiff." Order on Motion to Dismiss 2, *Alps South, LLC v. The Ohio Willow Wood Co.*, No. 8:08-cv-01893-T-33MAP (M.D. Fla. Feb. 11, 2010), ECF No. 73. Alternatively, the district court noted that under the *nunc pro tunc* amended agreement, Alps "clearly possesses the substantial rights to proceed without [AEI] in the case." *Id.*

Shortly before trial, the district court *sua sponte* reconsidered the standing issue and expressed concern about Alps's standing to maintain the action. The court indicated that, although it had come to believe that Alps lacked standing when it filed the action, it had not found any binding authority that precluded a party from curing a standing defect through a post-filing agreement. Based on these concerns, the district court invited Alps to join

the patent owner as a co-plaintiff. Alps declined to do so, however, and the case proceeded to trial, after which a jury found the '109 patent valid and infringed.

OWW now appeals, arguing, among other things, that the original license did not convey sufficient rights in the '109 patent to provide Alps with standing to pursue this infringement litigation in its own name, without AEI. OWW also argues that the *nunc pro tunc* agreement could not cure this defect. We agree with OWW and therefore reverse the district court's denial of OWW's motion to dismiss for lack of standing, vacate the judgment entered against OWW, and remand with instructions to dismiss the action for lack of jurisdiction.

## DISCUSSION

Standing is a jurisdictional question, which we review *de novo*. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1551 (Fed. Cir. 1995) (en banc). Neither party disputes that Alps possessed standing under Article III. Before we may exercise jurisdiction over a patent infringement action, however, we must also satisfy ourselves that, in addition to Article III standing, the plaintiff also possessed standing as defined by § 281 of the Patent Act. Under 35 U.S.C. § 281, a "patentee" has standing to pursue a patent infringement action. *H.R. Techs., Inc. v. Astechnologies, Inc.*, 275 F.3d 1378, 1384 (Fed. Cir. 2002). The word "patentee" is not limited to the person to whom the patent issued, but also includes "successors in title to the patentee." 35 U.S.C. § 100(d); *see also H.R. Techs.*, 275 F.3d at 1384 ("In order to have standing, the plaintiff in an action for patent infringement must be a 'patentee' pursuant to 35 U.S.C. §§ 100(d) and 281 . . . ."). The parties in this case dispute whether Alps was a "patentee" under § 281.

In addition to the patent owner, our case law provides that "[a]n exclusive licensee has standing to sue in its own name, without joining the patent holder where 'all substantial rights' in the patent are transferred." *Int'l*

*Gamco, Inc. v. Multimedia Games, Inc.*, 504 F.3d 1273, 1276 (Fed. Cir. 2007). When a patent owner transfers all substantial rights, "the transferee is treated as the patentee and has standing to sue in its own name." *Propat Int'l Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1189 (Fed. Cir. 2007); *see also Int'l Gamco*, 504 F.3d at 1276 (observing that a licensee with all substantial rights "is effectively an assignee"); *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1250 (Fed. Cir. 2000) (explaining that an entity "that has been granted all substantial rights under the patent is considered the owner regardless of how the parties characterize the transaction that conveyed those rights."). If, however, the transferee or licensee does not hold all substantial rights, it may "sue third parties only as a co-plaintiff with the patentee." *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 240 F.3d 1016, 1017 (Fed. Cir. 2001) (quotation marks omitted).

I

OWW first argues that Alps's original license agreement with AEI did not convey all substantial rights in the '109 patent to Alps. In response, Alps asserts that it did possess all substantial rights in the '109 patent because it held the right to exclude and the right to pursue infringement litigation under its own control and at its own cost.

"To determine whether an exclusive license is tantamount to an assignment, we 'must ascertain the intention of the parties [to the license agreement] and examine the substance of what was granted.'" *Alfred E. Mann Found. for Scientific Research v. Cochlear Corp.*, 604 F.3d 1354, 1359 (Fed. Cir. 2010) (alteration in original) (quoting *Mentor*, 240 F.3d at 1017). Here, the original agreement was an exclusive license covering numerous patents, including the '109 patent. The license also granted Alps the right to enforce the '109 patent and provided that AEI would cooperate "to the extent necessary . . . , including

(without assignment of ownership to any Patent Rights) transferring of such rights to [Alps] as are necessary to enable [Alps] to enforce the PATENT RIGHTS in its own name." Joint Appendix (J.A.) 18373.

At the same time, however, the original agreement restricted Alps's rights in significant ways and provided that AEI would retain certain rights for itself. For example, the original agreement prohibited Alps from settling any infringement actions without AEI's prior written consent. AEI also retained the right to pursue infringement litigation if Alps declined to do so within six months of learning of suspected infringement. Most importantly, the license agreement limited Alps's right to "develop, make, have made, use, sell, offer to sell, distribute, lease, and import" products covered by the '109 patent, J.A. 18367, to a particular "field of use":

> 1.2 "FIELD" shall mean prosthetic products.

> 1.3 "LICENSED PRODUCTS" shall mean prosthetic liners, suspension sleeves, knee braces, and related health care gel products limited to said FIELD, which are covered by a VALID CLAIM of any patent listed in Schedule A hereof.

J.A. 18364. The license similarly limited Alps's right to pursue patent infringement to the same field of use:

> So long as [Alps] remains the exclusive licensee under [this agreement] of any PATENT RIGHTS with respect to LICENSED PRODUCTS *in the FIELD* IN THE territory . . . , [Alps] shall have the exclusive right, under its own control and at its own expense, to prosecute any third party infringement of any patents within PATENT RIGHTS with respect to LICENSED PRODUCTS in the FIELD in the TERRITORY . . . .

J.A. 18373 (emphasis added). To establish standing, Alps relies solely on its receipt of the right to exclude and the

right to sue. Yet, because the license restricted these rights to a field of use, the end result is that AEI retained the exclusive right to make, use, and sell products covered by the '109 patent in all areas outside the field of prosthetic products.

Precedent dictates that the original agreement's field of use restriction is fatal to Alps's argument that it had standing to file this action. The Supreme Court has long recognized that an exclusive licensee cannot sue for infringement without joining the patent owner if the license grants merely "an undivided part or share of th[e] exclusive right [granted under the patent]." *Waterman v. Mackenzie*, 138 U.S. 252, 255 (1891); *see also Pope Mfg. Co. v. Gormully & Jeffery Mfg. Co.*, 144 U.S. 248, 252 (1892) (explaining a licensee may not file suit in its own name, without joining the patent owner, when the owner has conveyed only one part of the exclusive rights to make, use, and sell as conferred by the patent). More recently, in *International Gamco*, we explained that finding that a field of use licensee has standing "to sue in its own name alone poses a substantial risk of multiple suits and multiple liabilities against an alleged infringer for a single act of infringement." 504 F.3d at 1278. Accordingly, we concluded that our standing jurisprudence "compels an exclusive licensee with less than all substantial rights, *such as a field of use licensee*, to join the patentee before initiating suit." *Id.* (emphasis added); *see also A123 Sys., Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1217 (Fed. Cir. 2010). Our case law thus establishes a clear rule for cases involving licenses with field of use restrictions. Because the license restricted Alps's rights in the '109 patent to the field of prosthetic products, Alps lacked standing to pursue this litigation without naming AEI as a co-plaintiff.

II

Alps next argues that, even if it lacked standing under the original agreement, it cured this defect by executing a *nunc pro tunc* amended agreement. Specifically, on January 28, 2010, while the motion to dismiss was pending, Alps and AEI executed an amended license agreement, which eliminated the field of use restriction and instead covered "any products that are covered by a VALID CLAIM . . . , *including, but not limited to*, prosthetic liners, suspension sleeves, knee braces, and related health care gel products." J.A. 18397 (emphasis added). The amended agreement also eliminated the provision permitting AEI to pursue litigation against potential infringers if Alps declined to do so. Importantly, the amended agreement purported to be effective as of August 31, 2008, the same date as the original license agreement.

Neither party seems to dispute that if the amended agreement had been executed prior to Alps filing suit, Alps would have had standing to sue without joining AEI. The parties' dispute focuses on whether a *nunc pro tunc* agreement may cure a defect in standing that existed when the suit was initiated. Alps urges us to conclude that the *nunc pro tunc* nature of the agreement cured the jurisdictional defect. OWW, on the other hand, asserts that Alps cannot correct a jurisdictional defect that existed at the time the complaint was filed by post-filing activity. OWW is correct.

"[N]unc pro tunc assignments are not sufficient to confer retroactive standing." *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998). In *Enzo*, the licensee filed a patent infringement suit, but the written license agreement that existed at the time of filing did not include any rights to the asserted patent. 134 F.3d at 1092. After the licensee filed the action, the licensee sought to retroactively acquire title to the asserted patent by executing an amended license agreement

with an effective date that predated the initiation of the suit. *Id.* The licensee argued that this agreement provided a basis for standing. We disagreed and concluded that this standing defect could not be cured by a retroactive license agreement. *Id.* at 1093–94. We further noted that a party may not vindicate rights in court before the party actually possesses the rights. *Id.* (citing *Procter & Gamble Co. v. Paragon Trade Brands, Inc.*, 917 F. Supp. 305, 310 (D. Del. 1995)); *see also Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1365–66 (Fed. Cir. 2010) (recognizing that a plaintiff could not execute a *nunc pro tunc* assignment of the asserted patent to remedy the fact that the plaintiff lacked legal title to that patent at the time it filed the lawsuit).

Alps misinterprets *Enzo* by describing it as a case about Article III standing. *Enzo* addressed whether the licensee possesses "all substantial rights" at the time the complaint was filed, in other words, whether a licensee may be considered a "patentee" under § 281. Consequently, the reasoning and holding of *Enzo* are binding on the present case.

Alps also broadly argues that we have routinely permitted plaintiffs to cure this type of standing defect during the course of a lawsuit. The cases cited by Alps, however, involve our practice of endorsing joinder of patent owners, under Rule 21 of the Federal Rules of Civil Procedure, in order to avoid dismissal for lack of standing. *See Mentor*, 240 F.3d at 1019 (recognizing that defects in standing ordinarily require dismissal, but Rule 21 permits courts to drop or add parties at any stage of the litigation and on such terms as are just); *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1348 (Fed. Cir. 2001) ("[T]his court has recognized the principle that a patent owner may be joined by an exclusive licensee" without dismissing the case for lack of jurisdiction.). But *Enzo* precludes us from expanding this practice to permit a plaintiff to cure a standing defect by

executing a *nunc pro tunc* license agreement after filing a case.

Alps also relies on its supplemental complaint, which it filed after the reexamination certificate issued on the '109 patent. Alps argues that, because the trial proceeded on the patent claims that emerged from reexamination—the subject matter of the supplemental complaint—the supplemental complaint's reference to the *nunc pro tunc* agreement also cured any defect in standing. We disagree. The party asserting patent infringement is "required to have legal title to the patents on the day it filed the complaint and that requirement can not be met retroactively." *Abraxis*, 625 F.3d at 1366. Finally, although the supplemental complaint refers to an August 31, 2008, exclusive license agreement, nothing in the supplemental complaint mentions the amended *nunc pro tunc* agreement.

Alps's attempt to characterize its supplemental complaint as an amended complaint fares no better. To be sure, 28 U.S.C. § 1653 permits parties to amend their complaints to correct "[d]efective allegations of jurisdiction." But the Supreme Court has explained that this provision is drafted in terms of "*allegations* of jurisdiction," which means that the ability to amend applies only to "incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830–32 (1989) (emphasis added) ("[E]very Court of Appeals that has considered the scope of § 1653 has held that it allows appellate courts to remedy inadequate jurisdictional allegations, but not defective jurisdictional facts."); *see also Pressroom Unions-Printers League Income Sec. Fund v. Cont'l Assurance Co.*, 700 F.2d 889, 893 (2d Cir. 1983) ("[W]e have never allowed [§ 1653] to create jurisdiction retroactively where none existed."); *Field v. Volkswagenwerk AG*, 626 F.2d 293, 306 (3d Cir. 1980) ("[Section] 1653 . . . allow[s] amendment only of defective

allegations of jurisdiction; it does not provide a remedy for defective jurisdiction itself."). Here, when Alps filed its complaint, it was merely an exclusive field of use licensee that lacked all substantial rights in the '109 patent. There were no errors in the jurisdictional facts as pleaded in the original complaint. Thus, Alps could not avail itself of § 1653 to amend the jurisdictional allegations that appeared in its original complaint.

CONCLUSION

Because Alps possessed neither legal title nor all substantial rights at the outset of this litigation, our standing jurisprudence required that Alps join the patent owner, AEI, as a co-plaintiff. Because Alps failed to do so, we reverse the district court's denial of the motion to dismiss for lack of standing. We therefore vacate the judgment below and remand with instructions for the district court to dismiss Alps's complaint without prejudice. Because the district court lacked jurisdiction to adjudicate the parties' dispute, we need not reach the parties' remaining arguments.

**REVERSED, VACATED, AND REMANDED**