NOTE:  This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

———————————

**RECOR MEDICAL, INC.,**
*Plaintiff-Appellee*

**v.**

**MEDTRONIC IRELAND MANUFACTURING
UNLIMITED CO.,**
*Defendant-Appellant*

**MEDTRONIC VASCULAR, INC., MEDTRONIC,
INC.,**
*Defendants*

———————————

2025-1998

———————————

Appeal from the United States District Court for the
Northern District of California in Nos. 3:22-cv-03072-TLT,
3:25-cv-05881-TLT, Judge Trina L. Thompson.

———————————

Decided:  May 19, 2026

———————————

ASHLEY M. FRY, Latham & Watkins LLP, Washington,
DC, argued for plaintiff-appellee.  Also represented by
GABRIEL K. BELL, MATTHEW J. MOORE, JACOB VANNETTE;
ROGER J. CHIN, San Francisco, CA.

2                          RECOR MEDICAL, INC. v.
        MEDTRONIC IRELAND MANUFACTURING UNLIMITED CO.

GREGORY A. CASTANIAS, Jones Day, Washington, DC, argued for defendant-appellant. Also represented by ROBERT BREETZ, Cleveland, OH; JENNIFER SERAPHINE, KEELEY IRENE VEGA, Thompson Hine LLP, San Mateo, CA.

————————————

Before CHEN, HUGHES, and STARK, *Circuit Judges.*

CHEN, *Circuit Judge.*

Medtronic Ireland Manufacturing Unlimited Co. (Medtronic Ireland) appeals from a decision of the United States District Court for the Northern District of California dismissing its counterclaims of patent infringement against Recor Medical, Inc. (Recor) for lack of constitutional standing. *Recor Med., Inc. v. Medtronic Ireland Mfg. Unlimited Co.*, No. 22-CV-03072-TLT, 2025 WL 2272414, at *1 (N.D. Cal. July 7, 2025) (*Decision*). Prior to filing suit, Medtronic Ireland licensed several rights under the asserted patents to an exclusive licensee, but retained others, including the right to sue third parties for patent infringement. In a precedential opinion we issued today in a different appeal addressing constitutional standing, *A.L.M. Holding Co. v. Zydex Industries Private Ltd.*, No. 25-1317 (Fed. Cir. May 18, 2026), we held that the patent owner in that case had constitutional standing because it retained a right to sue for patent infringement that was not rendered illusory by the rights it granted to its licensee. Because Medtronic Ireland's retained rights are materially the same as the patent owner's in *A.L.M.*, we hold that Medtronic Ireland retained an exclusionary right sufficient to satisfy the "irreducible constitutional minimum of standing," and we *reverse* and *remand*.

BACKGROUND

A. The Patent License Agreement

Medtronic Ireland is the owner of U.S. Patent Nos. 8,845,629 ('629 patent) and 11,801,085 ('085 patent)

(collectively, Asserted Patents).  The Asserted Patents describe systems and methods for renal neuromodulation, in which thermal energy is used to heat or cool neural fibers that contribute to kidney function.  Medtronic Vascular Galway Unlimited Company (Medtronic Galway) is the manufacturer of Medtronic's[1] Symplicity Spyral™ renal denervation (RDN) system, which uses renal neuromodulation to treat hypertension.

Through an April 2023 license agreement (Exclusive License Agreement or ELA), Medtronic Ireland licensed certain rights in the Asserted Patents to Medtronic Galway.  J.A. 3641–52.  These include the "exclusive license" "to use, make, [] have made," "import, offer for sale, and sell" "Product."  *Id.* at 3643 §§ 2.1, 2.2.  "Product" is defined as "any finished medical device, as specifically designated by [Medtronic Ireland] and agreed to by [Medtronic Galway] for sale into the medical field including the products for catheter-based therapies to treat hypertension and related conditions."  *Id.* at 3642 § 1.9.

In the event of any third-party patent infringement, Medtronic Galway has the first right to sue to enforce the patents.  *Id.* at 3644–45 § 3.6(a).  Medtronic Ireland retains the right to participate in such an action.  *Id.*  Moreover, Medtronic Ireland may bring an enforcement action itself if Medtronic Galway declines or fails to act within a reasonable time.  *Id.*  The ELA further provides that any settlement amounts will first be used to pay each party's share of litigation costs, with the remaining amounts "allocated ratably between the Parties based upon the economic damages suffered by each Party."  *Id.* § 3.6(b).

---

[1]    Medtronic Ireland and Medtronic Galway are part of a broader global group of related entities called Medtronic.

The ELA also addresses Medtronic Galway's ability to transfer its rights. While Medtronic Galway may sublicense patent rights, this right is subject to Medtronic Ireland's "prior written consent" which is "not to be unreasonably withheld." *Id.* at 3643 § 2.4. Likewise, the ELA prohibits any assignment of Medtronic Galway's rights under the agreement without the express written consent of Medtronic Ireland. *Id.* at 3648 (Article XI). Medtronic Galway must also pay Medtronic Ireland royalties, including on sales by sublicensees, "at a rate agreed between the Parties." *Id.* at 3645 § 6.1.

The ELA provides that Medtronic Galway "shall not at any time do . . . or otherwise fail to do any act or thing that would have the effect of[] contesting or impairing [Medtronic Ireland's] ownership or exclusive rights in the Intellectual Property." *Id.* at 3647–48 § 9.1. The parties retain the right to terminate the ELA in the event of a material breach. *Id.* at 3648 §§ 10.2, 10.3. The ELA is set to expire on "the last Friday of April, 2028," at which time all patent rights will revert to Medtronic Ireland. *Id.* § 10.1.

## B. District Court Litigation

In May 2022, Recor sued Medtronic Ireland and Medtronic Vascular, Inc. in the Northern District of California, seeking a declaration that the claims of the '629 patent are invalid and not infringed by Recor's Paradise System, which competes with Medtronic's RDN system. Medtronic Ireland answered Recor's complaint and asserted counterclaims of patent infringement, alleging that Recor infringed the '629 and '085 patents. In response, Recor asserted counterclaims, seeking a declaratory judgment that the claims of the '085 patent are invalid and not infringed.

During discovery, Medtronic Ireland produced the ELA to Recor and subsequently moved to join Medtronic Galway as a party to the litigation under Federal Rule of Civil Procedure 19. Recor opposed Medtronic Ireland's motion and

instead moved to dismiss Medtronic Ireland's counterclaims, asserting that Medtronic Ireland's transfer of rights to Medtronic Galway under the ELA deprived it of the exclusionary rights necessary for Article III standing.

The district court granted Recor's motion to dismiss. *Decision*, 2025 WL 2272414, at \*8. The district court first determined that Medtronic Ireland's right to sue was not an exclusionary right sufficient to establish Article III standing. *Id.* at \*4–6. In doing so, the district court relied on this court's decision in *Morrow v. Microsoft Corp.*, 499 F.3d 1332 (Fed. Cir. 2007), where we held that when patent rights are split among multiple entities, a non-patentee plaintiff's contractual right to sue for infringement—separated from all other patent rights—did not confer an exclusionary right sufficient for constitutional standing. *Id.* at 1342–43. The district court then determined that Medtronic Ireland's right to veto any sublicenses, its right to limit sublicenses and assignments, and its revisionary rights were likewise insufficient to establish constitutional standing. *Decision*, 2025 WL 2272414, at \*6–8.

After it concluded that Medtronic Ireland lacked constitutional standing, the district court dismissed Medtronic Ireland's counterclaims without prejudice, dismissed for lack of subject matter jurisdiction Recor's declaratory judgment claims of noninfringement and invalidity as to both Asserted Patents, and denied as moot Medtronic Ireland's motion for joinder. *Id.* at \*8–9.

Medtronic Ireland timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

### STANDARD OF REVIEW

We review Article III standing determinations de novo. *Intell. Tech LLC v. Zebra Techs. Corp.*, 101 F.4th 807, 813 (Fed. Cir. 2024) (citing *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1363 (Fed. Cir. 2010)). In interpreting

a contract, we generally apply state law, including to determine "who owns the patent rights and on what terms." *Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 841 (Fed. Cir. 2009) (internal quotation marks and citation omitted). "Contract interpretation is a question of law that [appellate courts] review de novo." *Carroll Shelby Licensing, Inc. v. Halicki*, 138 F.4th 1178, 1186 (9th Cir. 2025) (citation omitted); *see also Tex. Instruments Inc. v. Tessera, Inc.*, 231 F.3d 1325, 1329 (Fed. Cir. 2000).

DISCUSSION

A.  Mootness

We begin by addressing whether this appeal has been rendered moot by intervening developments in related district court litigation.

Article III of the Constitution limits the jurisdiction of federal courts to actual cases and controversies. U.S. CONST. art. III, § 2, cl. 1. "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (internal quotation marks and citation omitted).

Recor argues that no live controversy remains because the Medtronic parties amended the ELA to address the district court's dismissal of Medtronic Ireland's claims for lack of constitutional standing and filed a new lawsuit in *Medtronic Ireland Manufacturing Unlimited Co. v. Recor Medical, Inc.*, No. 25-cv-05881-TLT (*Recor II*) that purportedly provides a means to obtain the same relief sought in the original lawsuit in *Recor Medical, Inc. v. Medtronic Ireland Manufacturing Unlimited Co., et al.*, No. 22-cv-03072-TLT (*Recor I*). ECF No. 44 at 1. We disagree.

This case is not moot because legal consequences continue to flow from the district court's dismissal in *Recor I*.

These consequences include, at a minimum, the viability of Recor's affirmative defense of unclean hands, which is based on Medtronic Ireland's assertion of counterclaims in *Recor I*. Although Recor attempts to recast its defense as "not based on the merits of the district court's decision," ECF No. 50 at 6, it alleges in *Recor II* that it was "materially prejudiced" by "Medtronic's misrepresentations regarding rights and interests in the Asserted Patents." Am. Answer, *Recor II*, Dkt. No. 34 (N.D. Cal. Aug. 19, 2025) at 11. That theory depends, in part, on the premise that Medtronic Ireland lacked sufficient rights to sue in its own name in *Recor I*. A reversal would undercut that premise and, in turn, weaken the basis for Recor's unclean hands defense. Accordingly, because a reversal by this court would have legal consequences (for at least this reason), we find the case is not moot.

## B. Constitutional Standing

We now turn to the merits of the appeal. Medtronic Ireland argues that, as the patent owner, its rights to sue and receive royalties together are sufficient to show that it retained an exclusionary right necessary for Article III standing. Appellant Br. 26–29.[2] *See Zebra Techs.*, 101 F.4th at 814 ("In general, the question for the injury-in-fact threshold is whether a party has *an* exclusionary right."). We agree.

In a separate order issued today, we held that a patent owner retained an exclusionary right under a materially similar license agreement. *A.L.M. Holding Co. v. Zydex Indus. Priv. Ltd.*, No. 25-1317, slip op. at 1 (Fed. Cir. May 19,

---

[2]    In the alternative, Medtronic Ireland asserts other bases for having constitutional standing, including that its allegations of monetary harm independently satisfy the constitutional injury in fact requirement. Appellant Br. 40–46. We need not reach these issues.

2026). There, we explained that when a patent owner retains a right to sue third parties for patent infringement that is not rendered illusory by the rights granted to a licensee, that patent owner retains an exclusionary right sufficient for constitutional standing. *Id.* at 10–15.

That same principle controls here. In *A.L.M.*, we emphasized that a plaintiff's right to sue, right to veto sublicenses, and royalty interests ensured that that the plaintiff retained both a concrete stake in excluding unauthorized practice of the patents and a mechanism to enforce that interest. *Id.* at 10–11. The *A.L.M.* plaintiff's sublicensing veto helped preserve its exclusionary interest because it prevented the licensee from unilaterally authorizing an accused infringer's practice of the patents without plaintiff's approval and free of plaintiff's royalty interests. *Id.*

We distinguished *Morrow*, where the plaintiff's right to sue was "illusory." *Id.* at 13–14 (citing *Morrow*, 499 F.3d at 1342–43, 1336, 1338). We explained that in *Morrow*, the patent owner could moot any suit brought by the plaintiff by granting a royalty-free sublicense to the accused infringer. *Id.* By contrast, a patent owner's right to sue is not rendered illusory in light of its retained royalty interests that attach to sublicenses, as well as its right to withhold consent to sublicenses that may moot any suit brought by the patent owner. *Id.* (citing *Alfred E. Mann Found. for Sci. Rsch. v. Cochlear Corp.*, 604 F.3d 1354, 1362 (Fed. Cir. 2010)).

Here, Medtronic Ireland retains patent rights materially similar to the rights retained by the patent owner in *A.L.M.* It holds a secondary right to sue (J.A. 3644–45 § 3.6), royalty interests (*Id.* at 3645 § 6.1), and veto authority over sublicenses (*Id.* at 3643 §§ 2.4, 2.5). Taken together, these rights ensure that Medtronic Ireland's right to enforce the patents it owns is not illusory and that its exclusionary interests remain intact. The same rights that conferred standing in *A.L.M.* thus confer standing here.

The fact that Medtronic Ireland's right to sue is secondary to Medtronic Galway's does not change our analysis. *See* Appellee Br. 30. In *Mann*, we rejected the argument that a secondary right to sue was insubstantial for standing. 604 F.3d at 1361–63; *see also Abbott Lab'ys v. Diamedix Corp.*, 47 F.3d 1128, 1132 (Fed. Cir. 1995) (finding no transfer of all substantial rights where the patent owner retained, among other rights, a secondary right to sue). We explained that while the patent owner's right to choose to sue did not vest until the licensee chose not to sue, it was "otherwise unfettered" because once that right activated, the owner had complete control and discretion over the litigation. *Mann*, 604 F.3d at 1362. We reaffirmed in *A.L.M.* that this analysis regarding a patent owner's right to sue—though developed in the context of statutory standing—is instructive in assessing whether that same right is real or nullified by a licensee's granted rights for purposes of Article III standing. *A.L.M.*, slip op. at 8–9.

Recor contends that Medtronic Ireland's right to sue is not an exclusionary right because it cannot grant a license itself to settle a lawsuit. Appellee Br. 31, 37. Article 3.6(b), however, provides for the allocation of settlement proceeds between the parties, indicating that Medtronic Ireland retains the authority to settle lawsuits (at least for damages) that it initiates. J.A. 3644–45 § 3.6. Thus, even in light of Medtronic Galway's right to sublicense, Medtronic Ireland retains a meaningful ability to settle the lawsuits it initiates.[3]

---

[3]    To the extent that Recor contends that the ELA permits Medtronic Galway to grant a royalty-free sublicense to any accused infringer, *see* Oral Arg. at 26:43–26:50, available at https://www.cafc.uscourts.gov/oral-arguments/25-1998_03032026.mp3, any such grant would be expressly subject to Medtronic Ireland's consent. *See* J.A. 3643 § 2.4. It would be reasonable for Medtronic

Medtronic Ireland also retains control over the scope of its license grant. Medtronic Ireland's grant of exclusive rights to Medtronic Galway under Articles 2.1 and 2.2 are limited to rights related to "Product," which is defined as "any finished medical device, as specifically designated by Licensor and agreed to by Licensee." *Id.* at 3642–43 §§ 1.9, 2.1, 2.2. Thus, for Medtronic Galway to have any exclusionary right, Medtronic Ireland must first "specifically designate[]" a finished medical device as a "Product." *Id.* at 3642 § 1.9. Beyond that, Medtronic Ireland retains all rights, including exclusionary rights, to all un-"designated" products, as well as unfinished medical products.[4]

Recor also argues that Medtronic Ireland lacks any exclusionary right because it granted to Galway the "exclusive right to exclude others" from practicing the invention. Appellee. Br. 30 (citing J.A. 3643 §§ 2.1, 2.2, 2.4), 37. This language, however, is limited to the scope of designated "Products," *see* J.A. 3642–43 §§ 1.9, 2.1, 2.2, and even for rights to "Products," Medtronic Ireland retains the secondary right to sue, *see id.* at 3644–45 § 3.6. Medtronic Ireland's right to join in infringement suits, as well as to initiate suits if Medtronic Galway declines to act, ensures

---

Ireland to withhold consent in such a circumstance to protect its patent rights.

[4]　　Recor argues that Medtronic Ireland does not retain rights through Article 1.9 because "Product" "include[s] the products for catheter-based therapies to treat hypertension and related conditions," which are co-extensive with the Asserted Patents. Oral Arg. 21:08–23:49. But we read the "including" clause as delimiting the category of products eligible for designation under the provision, not as dispensing with the requirement that a "*finished* medical device" must be *"specifically designated"* by Medtronic Ireland. *See* J.A. 3642 § 1.9 (emphasis added).

that it retains meaningful enforcement authority. *See* J.A. 3644–45 § 3.6.

Accordingly, on these facts, we hold that Medtronic Ireland retained an exclusionary right sufficient for the "irreducible constitutional minimum of standing," *Lujan*, 504 U.S. at 560, namely the non-illusory right to sue that its licensee, Medtronic Galway, could not nullify through unilateral, royalty-free sublicensing.

### C.  Joinder of Necessary Party

Medtronic Ireland next argues that because its counterclaims at most suffered from a curable defect in statutory standing, the district court should have allowed Medtronic Galway to be joined as a counterclaim plaintiff. Appellant Br. 46–48.  Recor does not dispute that joinder may be appropriate if this court determines that Medtronic Ireland had constitutional standing.  Appellee Br. 58.

The district court did not reach the merits of the parties' arguments on joinder under Rule 19.  *Decision*, 2025 WL 2272414, at *9.  Thus, we remand for the district court to determine, for the purposes of satisfying statutory standing, whether all necessary parties to this action were joined, or could be joined.  *See Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1238–39 (Fed. Cir. 2019).

### CONCLUSION

Medtronic Ireland retained at least an exclusionary right after its transfer of rights to Medtronic Galway under the ELA.  Because Medtronic Ireland has constitutional standing, we *reverse* and *remand*.

### REVERSED AND REMANDED

### COSTS

Costs to Appellant.